FLORENCE M. SAJEVIC AND OTHERS v.
GREENBRIER HOME, INC.
COMMISSIONER OF MANPOWER SERVICES,
RESPONDENT.

216 N. W. 2d 864.

March 8, 1974—No. 44254.

---

[1] Now commissioner of employment services. L. 1973, c. 254, § 1.

*Alfred R. Sundberg* and *James R. McClure,* for relator.

*Warren Spannaus,* Attorney General, *Jonathan H. Morgan,* Solicitor General, *Peter C. Andrews,* Assistant Attorney General, and *Frank W. Levin,* Special Assistant Attorney General, for respondent commissioner.

PER CURIAM.

Certiorari by an employer to review decisions of the state commissioner of manpower services[1] that claimants should not be disqualified from receiving unemployment benefits. We affirm.

Greenbrier Home, Inc., is the operator of a residential care facility for mentally retarded adults. At the start of the base period claimants were employed in its education department. Sometime prior to August 31, 1971, when claimants' employment with Greenbrier terminated, a new corporation, Phoenix, was formed. The original incorporators were Donald VanSlyke, who is the principal shareholder of Greenbrier and who also is the principal shareholder of another corporation operating a separate but similar facility, Norhaven; Harold Tapper, then administrator of Norhaven; and Peter Sajevic, assistant administrator of Greenbrier (and brother of one claimant and son of another). It was hoped that this new corporation, which was to provide educational services for mentally retarded adults in the community as well as those residing at Greenbrier and Norhaven, would be funded by government grants, thereby permitting Greenbrier and Norhaven to avoid the cost of providing for their residents services which Greenbrier and Norhaven were not required by law to furnish. Sometime during May or June 1971, Peter Sajevic, the assistant administrator of Greenbrier, informed claimants that the educational program at Greenbrier would be terminated and that they and certain other employees would be given jobs with Phoenix, which thereafter would serve the Greenbrier residents as well as others.

In July 1971, VanSlyke held a meeting with the Greenbrier educational staff and urged them to work for and cooperate with the Phoenix people. None of the claimants requested or protested the transfer. Each apparently felt that he had no choice and that he was only doing what was expected of him. On August 31, 1971, claimants terminated their

---

[1] Now commissioner of employment services. L. 1973, c. 254, § 1.

employment with Greenbrier. On September 1, 1971, they began working as employees of Phoenix, doing substantially the same work for substantially the same salary. During the ensuing months, while Phoenix was awaiting funding, Greenbrier purchased services for its residents by paying tuition for them, rented some of its facilities and permitted Phoenix to defer payment of the rent, and in addition loaned money to Phoenix. On March 31, 1972, Phoenix terminated its education program because funding was not forthcoming. Although Greenbrier reopened its education department and rehired certain employees who had gone to Phoenix, it did not offer positions to claimants.

On these facts we believe the commissioner was justified in rejecting Greenbrier's contention that claimants terminated their employment with Greenbrier "voluntarily and without good cause attributable to the employer." Minn. St. 268.09, subd. 1(1). In effect, claimants' jobs with Greenbrier were abolished. It is true that VanSlyke testified at the hearings that some claimants could have stayed on or that he probably could have accommodated some employees if they had expressed a wish to stay. However, even were this the case, there is no evidence that VanSlyke or an agent ever explained this to the claimants. Indeed, the only impression they were left with was that a decision had been made and that they had no reasonable choice in the matter but to accept the transfer. Under these circumstances, we hold that claimants are not disqualified pursuant to Minn. St. 268.09 from receiving any benefits. The disqualification provisions should be construed in light of the declared legislative policy of Minn. St. 268.03 to benefit those persons who are "unemployed through no fault of their own." See, e. g., Kantor v. Honeywell, Inc. 286 Minn. 29, 175 N. W. 2d 188 (1970). We are of the opinion claimants are not at fault for their unemployed status.

Affirmed.