**Barbara J. HENDRICKSON, Relator,**

v.

**NORTHFIELD CLEANERS, Respondent,**

**Department of Economic Security, Respondent.**

**No. 50401.**

Supreme Court of Minnesota.

July 3, 1980.

Paul Onkka, Southern Minnesota Regional Legal Services, Inc., St. Paul, for relator.

Warren Spannaus, Atty. Gen., and William G. Brown, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Economic Security.

Art Meyer, Faribault, for Northfield Cleaners.

Heard before SHERAN, C. J., PETERSON and SCOTT, JJ., and considered and decided by the court en banc.

SHERAN, Chief Justice.

Certiorari to review a decision by the Commissioner of the Department of Economic Security affirming an Appeal Tribunal's determination that relator was not entitled to unemployment compensation because she had refused to accept an offer of suitable reemployment by a base-period employer. Because this offer was not suitable, given relator's changed circumstances, we reverse.

Relator, Barbara Hendrickson, enrolled in a two-year registered nursing program at Rochester Community College in September 1976. During the summer of 1977 she worked part time, earning $2.30 per hour, as a clothes presser at Northfield Cleaners which was owned by some friends of hers. On September 9, 1977, she left her job as planned to return to school.

While relator was at home during spring vacation in March, 1978, the Post Office, acting on a four-year old application, called and offered her employment. Although she had only ten weeks more of coursework to complete in her nursing program, she decided to accept the job because she was having financial problems at school. She was terminated on June 20, 1978, the 87th day of her 90-day probationary period, on the ground that she had trouble lifting heavy sacks.

On June 25, 1978, relator filed a claim for unemployment benefits. She was found to be eligible for $92 per week. On August 11, 1978, as part of normal procedure followed by the Department of Economic Security, Northfield Cleaners was sent a MES–31–2 form which informs all base-period employers of the existence of a claim, whether or not they are affected by it. Although not required to do so, Northfield Cleaners returned the form to the Unemployment Compensation Office with the notation that it had work for relator. At this point her benefits were summarily terminated, and these appeals followed.

Relator began work as a governess on September 18, 1978. She works from 7:00 a. m. until 5:30 p. m. and earns $85 per week.

At issue in this case is whether the offer of reemployment by Northfield Cleaners was a suitable offer of employment such that relator's failure to accept it disqualified her from continued receipt of unemployment compensation benefits.

In reviewing decisions of administrative agencies, such as the Department of Economic Security, our role is extremely limited. *Lewis v. Minneapolis Moline, Inc.*, 288 Minn. 432, 181 N.W.2d 701 (1970); *Adelsman v. Northwest Airlines, Inc.*, 267 Minn. 116, 125 N.W.2d 444 (1963). The Commissioner's findings are reviewed in the light most favorable to his decision, and they will not be disturbed if there is evidence reasonably tending to sustain them. *Plowman v. Copeland, Buhl & Co., Ltd.*, 261 N.W.2d 581 (Minn.1977); *Kantor v. Honeywell, Inc.*, 286 Minn. 29, 175 N.W.2d 188 (1970); *Nyberg v. R. N. Cardozo & Brothers, Inc.*, 243 Minn. 361, 67 N.W.2d 821 (1954).

We have long recognized that, because the unemployment compensation statute is remedial in nature, it must be liberally construed to effectuate the public policy of Minn.Stat. § 268.03 (1978) that unemployment reserves be used "for the benefit of persons unemployed through no fault of their own." *See, e. g., Sajevic v. Greenbrier Home, Inc.*, 298 Minn. 574, 216 N.W.2d 864 (1974); *Swanson v. Minneapolis-Honeywell*

*Regulator Co.*, 240 Minn. 449, 61 N.W.2d 526 (1953); *Nordling v. Ford Motor Co.*, 231 Minn. 68, 42 N.W.2d 576 (1950). For this reason its disqualification provisions are to be narrowly construed. *Nordling, supra; Johnson v. Ford Motor Co.*, 289 Minn. 388, 184 N.W.2d 786 (1971). *See also* 76 Am. Jur.2d *Unemployment Compensation* § 6, at 880 (1975).

Disqualification from unemployment compensation benefits is governed by Minn. Stat. § 268.09, subd. 2 (1978) which reads, in pertinent part, as follows:

An individual shall be disqualified \* \* if the commissioner finds that he has failed, without good cause, either to apply for available, suitable work when so directed by the employment office, or the commissioner or to accept suitable work when offered him, or \* \* \* to accept suitable re-employment offered by a base-period employer.

(a) In determining whether or not any work is suitable for an individual, the commissioner shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience, his length of unemployment and prospects of securing local work in his customary occupation, and the distance of the available work from his residence.

In *Swanson v. Minneapolis-Honeywell Regulator Co.*, 240 Minn. 449, 457, 61 N.W.2d 526, 531 (1953), we construed "suitable work" to mean "such work as the employee customarily performs or such as he is reasonably fitted to perform by past experience or training \* \* \*." This definition is similar to that utilized by the Vermont Supreme Court in construing a statute identical to Minnesota's:

In essence, a suitable job is one that is reasonably related to the claimant's qualifications. Maximum utilization of a worker's skill and experience is a recog-

nized goal of the unemployment compensation system, and courts, as a general rule, have recognized the claimant's right to reject, without loss of benefits, a job which involves far less skill than he possesses. *Pacific Mills v. Director of Division of Employment Security*, 322 Mass. 345, 77 N.E.2d 413 (1948); *Bowman v. Troy Launderers and Cleaners*, 215 Minn. 226, 9 N.W.2d 506 (1943).

*In re Potvin*, 132 Vt. 14, 18, 313 A.2d 25, 27 (1973). Under certain circumstances the fact that the offer is really an offer of reemployment may suggest suitability, but there is no longer a statutory presumption to that effect.[1] Moreover, when what is offered is permanent employment in what was only a temporary summer job at the time it was previously accepted, the logical inference to be drawn is one of *unsuitability*. *See, e. g., Ball v. Review Bd. of Ind. Employment Security Div.*, 149 Ind.App. 494, 273 N.E.2d 869 (1971).

It is clear to us from the record that relator's circumstances had so changed as to render the offer of reemployment as a presser at Northfield Cleaners unsuitable. When she accepted the part-time summer job at the laundry, she was living at home and needed some extra money to get her through the summer. As relator testified at her appeal,

The reason that I was working at the cleaners during the summer is—and the reason I accepted $2.30 per hour—is because they were my friends and they needed help and it was just a summer job between school. I didn't have to pay rent, you know.

Thus, she accepted the job as a temporary means to assist her to get an education and improve her skills so that she could take on a more responsible and better paying job in the nursing field or working with people.

By the time her friends at Northfield Cleaners offered her back her old job,[2] her

---

1. *Lewis v. Minneapolis Moline, Inc.*, 288 Minn. 432, 181 N.W.2d 701 (1970), which endorsed this presumption, was based on an older version of chapter 268 which was repealed in 1969. Thus, we are not bound by its conclusion.

2. According to relator's testimony, there never was a formal offer. Shortly after leaving her

situation was markedly different. She had completed two quarters of registered nurses' training and one quarter of emergency medical care, and she was one quarter away from receiving her degree as a registered nurse. During her period of unemployment she testified that she was actively seeking work either in the medical field or with children, which were the areas in which she had received her training.

Because relator had, in fact, improved her skills in the months between the time she quit her temporary, summer job and when she was offered it back, employment as a presser could not be said to be reasonably related to her qualifications so as to make it suitable employment.[3] For this reason we hold that the Appeal Tribunal and the Commissioner erred when they found as a fact that the reoffer of employment at Northfield Cleaners was suitable employment.[4] Since relator was unemployed through no fault of her own, she was entitled to continued receipt of unemployment compensation.

Reversed.

---

Post Office job, she went to visit her friends to tell them that she had lost her job and was planning to go to the Twin Cities to look for work. She testified that, although she knew without her friends saying anything that she could have her presser's job back if she wanted it, she told them that she could not live on $2.30 per hour working part-time, and they understood her position.

3. The fact that the offer of employment would have paid relator less than she was receiving in unemployment compensation also strongly suggests its unsuitability, although we decline to decide the case on these grounds. As the court noted in *Merck & Co. v. Unemployment Compensation Bd. of Review*, 184 Pa.Super. 138, 132 A.2d 727 (1957), neither the fact that the salary in the proffered work was below the federal minimum wage nor the fact that it paid less than the claimant was receiving in unemployment compensation in and of itself was determinative of the unsuitability of the work, but each was a factor to be considered in reaching a decision as to unsuitability. See also *In re Potvin*, 132 Vt. 14, 313 A.2d 25 (1973).

4. Although we do not entirely accept appellant's position that the Commissioner of Economic Security based his decision on a statutory provision which was repealed by the legislature in 1971, it is clear in our minds that both the initial decision to terminate relator's benefits and the Appeal Tribunal's opinion rested on Minn.Stat. § 268.09, subd. 1(6) (1969). We call this error in the Claims Manual to the Commissioner's attention and assume that the failure to revise the Manual to reflect the current provisions of Chapter 268 was an administrative oversight which will be expeditiously rectified.