Michael K. SMITH, Relator,

v.

EMPLOYERS' OVERLOAD
COMPANY, Respondent,

Department of Economic Security,
Respondent.

Alan NOWICKI, Relator,

v.

TOP TEMPORARY, INC., Respondent,

Department of Economic Security,
Respondent.

Nos. 52088, 52089.

Supreme Court of Minnesota.

Dec. 17, 1981.

Martha A. Eaves, Southern Minnesota Regional Legal Services, Inc., St. Paul, for relators.

Warren Spannaus, Atty. Gen., and Joan Volz, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Economic Security.

Broeker, Hartfeldt, Hedges & Grant and Steven Mihalchick, Minneapolis, for Employer's Overload Co.

Top Temporary Inc., and Rodney Le-Claire, Bus. Mgr., for Top Temporary, Inc.

AMDAHL, Justice.

Relators Michael K. Smith (No. 52088) and Alan Nowicki (No. 52089) obtained writs of certiorari to review decisions of the Commissioner, Department of Economic Security, to the effect that each had voluntarily discontinued his employment without good cause attributable to the employer and was therefore disqualified from the receipt of unemployment compensation benefits under Minn.Stat. § 268.09, subd. 1 (1980). We reverse.

Relator Smith sought temporary hire with respondent Employers' Overload Company on October 15, 1979, after being separated from his regular full-time employment under nondisqualifying circumstances. He obtained four different 1-day jobs through respondent's temporary labor service; those jobs were performed on October 15, 18, 19 and 20. All four jobs involved unskilled labor and paid at a rate of $2.90 per hour. Smith was paid for his work by Employers' Overload at the end of each work day, except his last day, for which he was paid the following Monday, October 22.

Smith sought the temporary employment to pay for gas to continue his job search. However, in late October, 1979, Smith chose to apply for unemployment compensation rather than to continue the temporary job arrangement. He was paid unemployment compensation benefits in the amount of $182 before a claims deputy disqualified him on the ground that Smith had voluntarily terminated his employment with Employers' Overload, an allegedly disqualifying act under section 268.09, subd. 1(1).

Relator Nowicki was separated from his full-time employment at Quality Tool on June 22, 1979, under nondisqualifying circumstances. While his unemployment compensation claim was pending due to an employer protest, Nowicki sought temporary hire with respondent Top Temporary, Inc. Top Temporary assigned Nowicki to jobs of 1-day duration on July 9, 11, 13 and 21. He accepted one additional assignment for the evening of July 22, 1979, but was unable to perform that job due to unforeseen car trouble. Nowicki did not return to the temporary labor service to apply for any additional job offers after July 22.

Nowicki's claim for benefits based on his separation from Quality Tool was granted on August 13, 1979, but a claims deputy disqualified him from receipt of benefits on August 24, 1979, for having voluntarily discontinued ongoing employment at Top Temporary.

In each case, the determination of the claims deputy denying benefits was affirmed by the appeals tribunal and further review was sought from the Commissioner's representative. The representative affirmed the prior decisions in both cases.

While we are bound by the findings of fact and the reasonable conclusions made by the administrative tribunal, the determination of whether relators were properly disqualified from receipt of unemployment compensation benefits under Minn.Stat. § 268.09, subd. 1(1) (1980), is a question of law upon which this court is free to exercise its independent judgment. *See Johnson v. Wilson & Co.*, 266 Minn. 500, 124 N.W.2d 496 (1963). Moreover, we have stated on numerous occasions that the unemployment compensation statute is remedial in nature and must therefore be liberally construed to effectuate the public policy of Minn.Stat. § 268.03 (1980) that unem-

ployment reserves be used "for the benefit of persons unemployed through no fault of their own." *See, e.g., Berzac v. Marsden Building Maintenance Co.*, 311 N.W.2d 873 (Minn.1981); *Hendrickson v. Northfield Cleaners*, 295 N.W.2d 384 (Minn.1980); *Sajevic v. Greenbrier Home, Inc.*, 298 Minn. 574, 216 N.W.2d 864 (1974). For this reason the disqualification provisions of the statute are to be narrowly construed. *Johnson v. Ford Motor Co.*, 289 Minn. 388, 184 N.W.2d 786 (1971).

The issue presented is whether relators voluntarily discontinued an employment relationship with the temporary labor services so as to disqualify them from receiving unemployment compensation benefits under Minn.Stat. § 268.09, subd. 1(1) (1980). That section provides:

> Subdivision 1. Disqualifying conditions. An individual shall be disqualified for waiting week credit and benefits for the duration of his unemployment and until he has earned four times his weekly benefit amount in insured work if he is separated from employment under any of the following conditions:
>
> (1) Voluntary leave. The individual voluntarily and without good cause attributable to the employer discontinued his employment with such employer. For the purpose of this clause, a separation from employment by reason of its temporary nature or for inability to meet performance standards necessary for continuation of employment shall not be deemed voluntary.

Resolution of these cases requires a short discussion of the characteristics of temporary labor services. Both Employers' Overload and Top Temporary are labor brokers engaged in the business of supplying unskilled labor to local companies for short-term assistance. The temporary labor services seek workers on a daily basis, but make no guarantee of any job offer. Some or all of the workers who appear at the offices of the temporary labor services seeking a job may be sent to fill temporary positions with other companies if such work is available. A worker who is hired for a daily job is paid at the end of the workday by the temporary labor service.

Jobs are not held for particular workers. A worker who is hired for a daily job gains no rights with respect to benefits, seniority, overtime, or job assignment. Offers for work by the temporary labor services are made on a "first-come, first-served" basis and depend upon the demand for labor that day. Workers who apply at the temporary labor services are not compensated unless they are offered work and accept by performing the work.

█ We hold that because section 268.09, subd. 1(1), only disqualifies a person who voluntarily abandons *continuing* employment without good cause, relators may not be disqualified for merely failing to appear for a possible offer of employment, unless such employment would be deemed "suitable" under Minn.Stat. 268.09, subd. 2(a) (1980).[1] Our decision is based on principles of simple contract law and on legislative intent.

---

1. Minn.Stat. § 268.09, subd. 2(a) (1980), provides:

   > Subd. 2. Failure to apply for or accept suitable work or re-employment. An individual shall be disqualified for waiting week credit and benefits during the week of occurrence and until he has earned four times his weekly benefit amount in insured work if the commissioner finds that he has failed, without good cause, either to apply for available, suitable work of which he was advised by the employment office, or the commissioner or to accept suitable work when offered him, or to return to his customary self-employment (if any) when so directed by the commissioner, or to accept suitable re-employment offered by a base period employer.

   > (a) In determining whether or not any work is suitable for an individual, the commissioner shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience, his length of unemployment and prospects of securing local work in his customary occupation, and the distance of the available work from his residence.

   The Commissioner's representative in both 52088 and 52089 found that the unskilled labor offered by the temporary labor services was "unsuitable" for relators. We agree with that determination.

■■ A contract of employment is governed by the same rules applicable to other types of contracts, including the requirements of offer and acceptance. *Houle v. Stearns-Rogers Mfg. Co.*, 279 Minn. 345, 157 N.W.2d 362 (1968). The term of employment is determined by reference to the intention of the parties. *See Fountain v. Oreck's, Inc.*, 245 Minn. 202, 71 N.W.2d 646 (1955). The intent of the parties was manifestly contrary to the notion of an ongoing employment relationship. Smith and Nowicki were each given "one-day tickets" by the temporary labor services, and at the close of each work day they were paid for their work. The terms of the job offers, the time period for payment of wages, and the time period for performance are all consistent with the parties' intent to contract for one day.

Legislative intent and public policy also support our decision. The phrase "voluntary leave," as used in section 268.09, subd. 1(1), was not defined by statute until 1980. Subdivision 1 was amended in the 1980 legislative session to exclude from the definition of "voluntary leave" a "separation from employment by reason of its temporary nature * * *." Act of Apr. 7, 1980, ch. 508, § 9, 1980 Minn. Laws 463, 478–79. The amendment overruled our first decision in *Loftis v. Legionville School Safety Patrol Training Center, Inc.*, Finance & Commerce, July 27, 1979, withdrawn on rehearing and new opinion substituted, 297 N.W.2d 237 (Minn.1980), where we held that an individual who knowingly accepted an 11-week temporary job was disqualified at the termination thereof under section 268.09, subd. 1(1).

The second *Loftis* opinion gave express recognition to the public policy against penalizing one who accepts temporary employment:

> The statutory scheme requires a person actively to seek employment. Minn.Stat. § 268.08, subd. 1(3) (1978). Yet, one who accepted employment of a limited duration in an attempt to comply with this statutory provision would later be disqualified from receiving unemployment compensation because deemed to have voluntarily discontinued employment when the temporary job came to an end. Minn.Stat. § 268.09, subd. 1 (1978). Disqualifying a person for working at a temporary position is inherently contrary to the policies of the statute. Minn.Stat. § 268.08 (1978). Furthermore, it would require us to claim that a person was at fault by accepting temporary employment, a conclusion we were unwilling to reach in *Stawikowski v. Collins Elec. Constr. Co.*, 289 N.W.2d 390, 393 (Minn. 1979).

297 N.W.2d at 239 n.5.

The quoted language in *Loftis* and the expression of legislative intent evidenced by the 1980 amendment to subdivision 1 are dispositive of these cases. It makes no difference whether the temporary employment is for a duration of 11 weeks or 1 day. Footnote 5 in *Loftis* indicates the dilemma in which a recipient of unemployment compensation benefits could be placed if the Department's construction of section 268.09, subd. 1(1), is adopted. Even though relators could not have been required to accept an offer of day labor services because such work would have been deemed "unsuitable" for them, *see* Minn.Stat. § 268.09, subd. 2 (1980), once relators accepted such employment they were bound to continue to appear for job offers at the risk of disqualification under subdivision 1. Such a result penalizes the industrious worker and is contrary to existing legislative and judicial pronouncements.

Finally, the Department of Economic Security relies on *Danek v. Meldrum Mfg. and Eng'ring Co.*, 312 Minn. 404, 252 N.W.2d 255 (1977), where we held that plaintiff was an employee of both the temporary labor service and the defendant company, and that plaintiff was therefore precluded by the "sole remedy" provision of the Workers' Compensation Act from maintaining a tort action for personal injuries against defendant. The inference raised by respondent's reliance on *Danek* is that because the temporary labor service is an employer for purposes of workers' compensation, the service

is also an employer within the meaning of section 268.09, subd. 1(1), with whom the employee cannot discontinue his relationship. This reads too much into our opinion in *Danek*. The issue of whether an ongoing employment relationship existed between the temporary worker and the labor broker was not before the court in *Danek*. It is undisputed that once a worker accepts a job assignment, as was the case in *Danek*, the temporary service is one of the employers for that job until it is completed. However, it stretches our holding in *Danek* beyond what we intended to say that the temporary service agency is an employer to whom the worker must continue to report after the job assignment is completed at the risk of being disqualified from unemployment compensation benefits.

For the reasons stated above, we conclude that relators did not enter into an ongoing employment relationship with the temporary labor services and that their refusal to appear for subsequent potential offers of temporary employment was not a disqualifying act under Minn.Stat. § 268.09, subd. 1(1) (1980).

Reversed.