**J. Robert ROBERTSON, Plaintiff,**

v.

**R.B.A. INC., a corporation, R.B.A. Inc., d/b/a Stauffer Seed, Inc., and Stauffer Chemical Co., a corporation, Defendants.**

Civ. No. 82–3353.

United States District Court,
C.D. Illinois,
Springfield Division.

Aug. 23, 1985.

Jerry Tice, Petersburg, Ill., for plaintiff.

William S. Hanley, Michael A. Myers, Springfield, Ill., Frank H. Czajkowski, Stauffer Chemical Co., Westport, Conn., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge [*].

This cause is before the court on the motion for partial summary judgment of defendants, R.B.A. Inc., and Stauffer Chemical Co. (both Stauffer) filed March 15, 1985. Stauffer moves for summary judgment on Counts I, II, IV, V, VI, VII, VIII, IX, XI, XII, XIII and XIV of the Second Amended Complaint. For the reasons set forth below, defendants motion for partial summary judgment is granted with respect to Counts I, IV, V, VI, VIII, XI, XII, XIII; such motion is denied with respect to Counts II, VII, and IX and XIV.

### I.

In the time period relevant to this motion, plaintiff, J. Robert Robertson (Robertson) was a Vice President of R.B.A. Inc., a Minnesota Seed Company in bankruptcy. On September 22, 1980, Stauffer Chemical Co. acquired R.B.A. Inc. and entered into a written employment contract retaining Robertson as Area Marketing Manager to serve at the pleasure of the board for a salary of Fifty-five thousand and no/100 Dollars ($55,000.00). In dispute in this action is the length of the fixed term of the contract. The original contract retained by Stauffer reads as follows:

> 2. *Term:* The term of this Agreement shall begin on the effective date hereof and shall continue for a period of two (2) years.

Robertson maintains that the term of the contract was for a period of three (3) years.[1]

Testimony varies as to the circumstances surrounding the execution of Robertson's employment contract. However, the parties agreed to the following changes: (1) the original salary term of Fifty Thousand

---

[*] Sitting by designation pursuant to 28 U.S.C. § 292.

1. As Exhibit A to his Second Amended Complaint, Robertson attached a document purporting to be the contract executed on September 20, 1980. There the term of employment appears as follows:

> 2. *Term:* The term of this Agreement shall begin on the effective date hereof and shall continue for a period of three (3) years.

At his deposition, Robertson acknowledged that the document appearing as Exhibit A to the Second Amended Complaint was a copy of the contract made immediately after signing. (Deposition of J. Robert Robertson I, pp. 96, 103–104). He had kept it in the file drawer of his desk since its execution and upon being relieved of his duties in October, 1981, he altered the copy by striking through the word "two" and inserting the word "three". *Id.* at 103–104. Thus, the only original is the Stauffer original which Robertson acknowledged that he signed. *Id.* at 101–102. Consequently, there is no dispute that in the single document signed by the parties on September 22, 1980, the contract term was for two years.

and oo/100 Dollars ($50,000.00) was changed to Fifty-five thousand and oo/100 Dollars ($55,000.00); (2) the restrictive covenant was changed from two (2) to three (3) years; and (3) the title of the position was changed from Director of Marketing to Manager of Marketing.

Robertson was relieved of all his duties with Stauffer on or about October 5, 1981. Although he did not function in any capacity with Stauffer for the next year, Stauffer continued to pay him a salary until the expiration of the two (2) year contract term on or about September 22, 1982. Robertson commenced this action on November 8, 1982 in the Circuit Court for the County of Sagamon, Case No. 82–L–420, entitled *J. Robert Robertson v. Stauffer Chemical Company.* Soon thereafter on December 12, 1982, Stauffer removed this cause to this court pursuant to 28 U.S.C. § 1441. Stauffer filed its motion for partial summary judgment on March 15, 1985 and the accompanying brief on March 20, 1985. Robertson's response was docketed May 8, 1985. On May 28, 1985, this court heard oral argument on this motion in Springfield, Illinois and granted the parties leave to file supplemental authority. Subsequently, Stauffer filed a supplement to it original memorandum in support of its motion for partial summary judgment on May 24, 1985. Jurisdiction of this court is predicated upon 28 U.S.C. § 1332(a)(1).

## II.

### A.

A threshold issue that must be addressed by this court is the choice of law to be applied in this diversity action. Stauffer contends that Minnesota law applies here. It relies on the contract provision that specifies that the document be governed by the law of Minnesota. Robertson maintains that choice of law provision in the contract must yield to the law of the forum state (Illinois) where there is a fundamental public policy which would be violated if that law were not applied. In addition, plaintiff contends that the contract is an "adhesion contract" and the choice of law

provision should be unenforceable on that basis.

In a diversity case, a federal court must follow the conflict of laws principle of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In Illinois, where the parties expressly choose another state's law to govern their contract, their expressed choice will be honored. *Hofeld v. Nationwide Life Insurance Company,* 59 Ill.2d 522, 322 N.E.2d 454, 458 (1975); *Swanberg v. Mutual Benefit Life Insurance Company,* 79 Ill.App.3d 81, 34 Ill. Dec. 624, 627, 398 N.E.2d 299, 302 (1979); *Tele-Controls, Inc. v. Ford Industries, Inc.,* 388 F.2d 48, 51 (7th Cir.1967); *Carter v. Catamore Company, Inc.,* 571 F.Supp. 94, 95 (N.D.Ill.1983).

To circumvent this rule, Robertson argues that the "most significant contacts" test is applicable in this situation. He contends that the contract provision is but one factor to be considered by this court in determining which jurisdiction has the most significant contacts with the matter at issue. He concludes that in this case where the substantive law of Illinois and Minnesota are the same, Minnesota law will govern the issue. Where the law expresses a different policy between the two states, Illinois law will govern since Illinois is the state of performance and has the most interest in the action.

This court does not agree with Robertson's conclusions on the choice of law question. Initially, the court observes that the "most significant contacts" test has not be extended to contract actions in the state of Illinois. *Charles O. Finley & Co. v. Kuhn,* 569 F.2d 527, 547 (7th Cir.1978); *International Paper Co. v. Grossman,* 541 F.Supp. 1236, 1239–40 (N.D.Ill.1978). Robertson cites *P.S. & E Inc. v. Selastomer Detroit, Inc.,* 470 F.2d 125 (7th Cir.1972) in support of his position that the "most significant contacts" test is the correct conflict of law principle to be applied here. The court finds *P.S. & E. Inc.* distinguishable from this action in several respects. First, the agreement in *P.S. & E Inc.* con-

tained no express contract provision setting out the law to be applied in determining the validity of the contract and the rights created by the document. Second, the factual situation in *P.S. & E Inc.* was such that no existing Illinois authority would clearly govern the case. Under Illinois conflict of law principles, if more than one place of performance is involved, the place of the making of the contract governs its construction and obligations. *Id.* at 127. In *P.S. & E. Inc.*, the performance of the contract was to occur in several states and the place of making of the contract could not be firmly determined, it being arguably in Michigan or Illinois. It was only under these circumstances that the court surmised that Illinois courts would utilize the "most significant contacts" test.

Nor does this court find merit in Robertson's arguments that the choice of law provision in the contract should be unenforceable because the contract itself is an adhesion contract. Robertson relies on *American Food Management, Inc. v. Henson*, 105 Ill.App.3d 141, 61 Ill.Dec. 122, 434 N.E.2d 59 (1982) to demonstrate that the contract in issue is an adhesion contract. In *American Food Management, Inc.*, the court was called upon to construe an employment contract involving a covenant not to compete. The contract included a provision indicating that Missouri law was to control the enforcement of the contract. The plaintiff employer wished to have the contract provision on choice of law enforced while the defendant maintained that Illinois law controlled. The court found that the defendant had no more bargaining power with respect to the choice of law provision in the contract that he had with respect to the covenant not to compete and that the contract was an adhesion contract, 105 Ill.App.3d at 145, 434 N.E.2d at 62. However, the court determined that the result would be the same whether it applied Illinois law or Missouri law and ultimately, chose to apply Missouri law.

█ Also in *American Food Management, Inc.*, the court adopted Professor Corbin's definition of adhesion contracts as "agreements in which one party's participation consists in his mere 'adherence' un-

willing and often unknowing, to a document drafted unilaterally and insisted upon by what is usually a powerful enterprise." *Id.* In this action, Robertson claims that he negotiated his title, the term of employment, the salary and the term of the restrictive covenant. Robertson was not forced to accept the contract and had, at all times, the option to forego employment with Stauffer. The fact that the entire acquisition of R.B.A. Inc. by Stauffer hinged upon Robertson's acceptance of employment may have enhanced Robertson's negotiating position rather than diminish it. In sum, the court does not find the contract in question to be an adhesion contract.

Assuming *arguendo* that the agreement was indeed an adhesion contract and the governing law provision is rendered unenforceable, under Illinois conflict rules, the law of Minnesota would still govern. Absent an agreement by the parties in Illinois, the law of the place of performance governs the construction and obligations of the contract where the place of making and the place of performance differ, if the agreement is to be wholly performed in one jurisdiction. If more than one place of performance is involved, the place of making of the contract governs its construction and obligations. *International Paper Co. v. Grossman*, 541 F.Supp. at 1239–40 citing *Charles O. Finley & Co. v. Kuhn*, 569 F.2d 527, 542 (7th Cir.1978).

█ Here, Robertson's sales responsibilities covered an eight state region, including Minnesota, as reflected in the restrictive covenant. He supervised six district sales managers located in states other than Illinois. (Deposition of J. Robert Robertson II, p. 18). He reported to and received directions from Connecticut. (Deposition of J. Robert Robertson I, p. 141; Deposition I, pp. 49–50, 53). He acknowledged having performed services in Colorado, Missouri and Iowa (Deposition of J. Robert Robertson, pp. 112–113; Dep. II, p. 68). Stauffer's principal offices were in Connecticut. Further, Robertson reported to Connecticut and was terminated upon a decision made in Connecticut. Moreover, it

is undisputed that the contract was negotiated and executed in Minnesota and between parties in Minnesota. Based upon this record, the court finds that Minnesota law will be applied in this action.

### B.

The court turns now to the merits of Stauffer's motion for partial summary judgment. The Second Amended Complaint consists of fourteen (14) counts; the first seven (7) are directed to R.B.A. Inc. and the second seven (7) repeat the first seven (7) but are directed to Stauffer Chemical. The court will address as a pair the similar counts against each employer. The motion is not directed to Counts III and X in which a claim for fraud is pleaded.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party moving for summary judgment has the burden of establishing the lack of a genuine issue of material fact. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984); *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.1984). In determining whether the moving party carried its burden, the court must view the evidence and all inferences to be drawn therefrom in the light most favorable to the opponent of the moving party. *Landgrebe Motor Transport, Inc. et al v. District 72, International Association of Machinists & Aerospace Workers, AFL–CIO et al*, 763 F.2d 241, 244 (7th Cir.1985). With these standards in mind, the court turns to an examination of the counts on which summary judgment is sought.

Counts I and VIII plead breach of a written employment agreement claiming that the defendants failed to employ Robertson for the third year of a three (3) year term. It is undisputed that the original copy of the September 22, 1980 contract provides for a term of two (2) years. Robertson has also admitted that he received a salary for the two (2) year term and that the contract had been fully performed during that period. (Deposition of J. Robert Robertson II, pp. 5, 87–88). Thus, there

can be no legal claim under the document itself for a salary for an additional year unless the writing can be challenged by parol evidence.

In Minnesota, a "contract of employment is governed by the same rules applicable to other types of contracts." *Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 223 (Minn.1981). In the absence of fraud and mistake, the parol evidence rule bars proof of a prior oral agreement to vary the clear terms of the written contract. *Montgomery v. American Hoist & Derrick*, 350 N.W.2d 405, 408 (Minn.App. 1984). No allegations of mistake or fraud appear in Counts I and VIII. Thus, standing solely as a breach of contract counts, Counts I and VIII must fail since the contract clearly indicates Robertson's term of employment was to be for two (2) years and it is admitted that Stauffer performed the contract for that term. Therefore, Counts I and VIII are dismissed.

Counts II and IX seek reformation on the theory that the parties mutually understood that the contract was to be for a three (3) year term, but by mutual mistake they failed to correct the language of the document to reflect such a term. Stauffer contends that no mistake was made and that the contract recites the term correctly. Robertson claims that he saw that the draft read two (2) years, got Stauffer's agreement to three (3) years, observed the changes being made, signed the document without reading it and was given the copy of the agreement as signed. He contends these actions manifest a mutual mistake.

As to Counts II and IX, summary judgment must be denied. In its brief in support of its motion for summary judgment at p. 6, Stauffer contends that the issue of a three (3) year employment term was never raised by Robertson in negotiations. *See also* Deposition of Anthony Laos, pp. 63–64. It is Robertson's contention that such a change was not only discussed but also agreed upon. *See* Deposition of Robert L. Walston, p. 27. These conflicting positions raise issues of material fact as to whether Laos mistakenly forgot to change

the term of the contract from two (2) to three (3) years or whether the term was ever intended to be changed.

Counts IV and XI allege that Stauffer had advised Robertson that his employment would be of a continuous nature and that because Stauffer had personnel policies and procedures with regard to terminations, the contract impliedly incorporated Stauffer's employment policies and procedures concerning termination. Counts VII and XIV, although stated separately and with more allegations of fact, are essentially identical to Counts IV and XI. Because of their similarity, these four counts will be treated together.

■ To the extent that Robertson contends that the contract is of a permanent nature, such allegations are barred by the parol evidence rule. *Montgomery v. American Hoist and Derrick Co.*, 350 N.W.2d at 408. As in *Montgomery*, the contract here carefully delineates Robertson's salary, title, duties and term of employment. That document is controlling and the parol evidence rule bars any proof of an alleged prior oral agreement for permanent employment.[2]

■ In conjunction with the allegation of permanent employment, Robertson argues that there existed at Stauffer employee personnel policies concerning termination. He contends that such policies and procedures were not followed with respect to his alleged dismissal. Although the contract in issue is a term contract, presumably Robertson is contending that it was not the expiration of the contract that constituted the termination but rather the event of his being relieved of his duties before the contract had expired.

The alleged termination policy and procedure referred to by Robertson is taken from the EEO Guideline for Supervisors. That guideline was not implemented at

R.B.A. until after Robertson had been relieved of his duties. Robertson acknowledged that he had never seen the termination policies until he was given a set of them by one of his former co-workers who had received them at a training session after Robertson had left. Deposition of J. Robert Robertson II, pp. 24–30. In order for Robertson to claim that the termination guidelines (which on their face do not apply to a withdrawal of duties), he must show, under Minnesota law, that they were, in fact, part of his contract.

Both parties rely on *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn. 1983) as supportive of their respective positions. In *Pine River State Bank*, the court considered the manner by which specific procedures in an employee handbook could create a binding unilateral contract. (It must be noted at this juncture that the *Pine River State Bank* court was dealing with an at will relationship and not a contract for a fixed term.) The court focused first on the need for offer and acceptance. It determined that in order to have an offer, there must be evidence that "the offer has been communicated by dissemination of the handbook to the employee." 333 N.W.2d at 626. Robertson admits that the handbook was never given to him and that the first dissemination of it was made only after the events of which he complains.

Robertson points to the fact that he was still under contract to Stauffer at the time the termination policy was disseminated in November 1981. He argues that under the rule set down in *Pine River State Bank*, the termination policy would automatically become part of his contract. While Robertson was still under contract to Stauffer receiving salary and benefits, he had been relieved of all duties and had been told to make himself available for reassignment. On this record, an issue of material fact

2. Robertson's allegation of permanent employment is contradicted by his own deposition testimony:

Q. And is it your testimony that the agreement, as it is written, does not reflect that what you thought you and Mr. Laos had agreed to?

A. Not totally.

Q. In what respect, a three-year term?

A. That's correct.

Q. And in no other respect?

A. That's correct.

Deposition of J. Robert Robertson I, p. 133.

exists with respect to whether these procedures and warnings did apply to an employee in Robertson's position.

Although Counts IV and XI and Counts VII and XIV are similar as noted above, because Counts IV and XI contain allegations of a contract of continuous nature which are barred by the parol evidence rule, Stauffer's motion for summary judgment with respect to those counts is granted and the court dismisses those counts. Stauffer's motion is denied, however, with respect to Counts VII and XIV because of the issue of material fact discussed above.

The court turns now to Counts V and VII. In those counts Robertson pleads that his contract contained an implied in law covenant that defendants would deal with him in his employment relationship with them in good faith and in a fair manner. Such a covenant is not generally recognized under Minnesota law. *Wild v. Rarig*, 302 Minn. 419, 234 N.W.2d 775, 790 (1975).

Even if this court would construe such a clause as an implied term of good cause before termination, Robertson is in no better position. First, implied terms of good cause come up only in the context of at will contracts. Again, Robertson did not have such a contract. Second, assuming *arguendo* that Robertson's contract could be construed as an at will contract, Minnesota courts have not imposed such an implied covenant upon at will contracts. *Bakker v. Metropolitan Pediatric P.A.*, 355 N.W.2d 330, 331 (Minn.App.1984). Counts V and VII are, therefore dismissed.

Finally, in Counts VI and XIII, Robertson alleges a violation of the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* He contends that he, at age forty-six (46), was discharged and replaced with one or more younger men, less than forty (40) years of age, who performed his duties.

The ultimate burden on a plaintiff in an age discrimination case is to prove that he was discharged because of his age. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984). Initially, the plaintiff must prove a *prima facie* case of age discrimination by showing (1) the employee is within the protected age group (40–70); (2) the employee was discharged; (3) the employee was qualified to do the job; and (4) the employee was replaced. *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1212 (7th Cir. 1985).

Having carefully reviewed the record in this case, this court finds that Robertson does not establish a *prima facie* case under the ADEA in that there is no evidence of a discharge here. Although Robertson was relieved of his duties on October 5, 1981, he continued to receive full benefits and salary by Stauffer through September 22, 1982, the point at which his two year contract expired. Although Robertson seeks recovery for salary and benefits beyond the expired two (2) year term, the original contract evidencing a two (2) year term is controlling absent allegations of mistake or fraud. Thus, Counts VI and XIII are dismissed.

Accordingly, it is the order of this court that defendants' motion for partial summary judgment be, and is hereby, denied in part and granted in part. Defendants' motion is GRANTED with respect to Counts I, IV, V, VI, VIII, XI, XII, XIII and these counts are DISMISSED; defendants' motion with respect to Counts II, VII, IX and XIV is DENIED. SO ORDERED.