**Carlene T. HENRY, Relator,**

v.

**DOLPHIN TEMPORARY HELP SER-VICES, and Department of Jobs and Training, Respondents.**

**No. C7-85-2279.**

Court of Appeals of Minnesota.

April 29, 1986.

Martha A. Eaves, St. Paul, for relator.

Jeffrey I. Ross, Minneapolis, for Dolphin Temporary Help Services.

Hubert H. Humphrey, III, State Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Jobs and Training.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

Relator Carlene Henry seeks review of a determination that she was totally disqualified from receiving unemployment compensation benefits because she refused a job offer from a temporary employment service. We reverse and remand.

## FACTS

Carlene Henry was laid off from her full-time job at General Foods on August 1, 1985 after working there for 16 years. At the time she was laid off, Henry was a computer specialist and was earning $1,700 per month.

After she was laid off, Henry became interested in working for NCR Compten. As a means of obtaining work at NCR, Henry went to respondent Dolphin Temporary Help Services and requested that Dolphin assign her temporary work at NCR. From August 19 through September 10, 1985, Henry accepted five temporary assignments at NCR, totaling 45 hours over a period of eight working days. The assignments were for secretarial work at a rate of $5 per hour. Dolphin assigned Henry work only at NCR.

While she was between assignments at NCR, Henry filed for unemployment compensation benefits, effective September 1, 1985. Consequently, both General Foods and Dolphin were considered Henry's base period employers.[1] (If Henry had filed for unemployment compensation benefits immediately after being laid off, General Foods would have been considered Henry's sole base period employer.)

On September 11, 1985, Dolphin offered Henry another short-term secretarial assignment at NCR, again at $5 per hour. Henry turned down the assignment because she believed she had accomplished her goal of making contacts with NCR and felt that the temporary work at NCR was taking her away from her search for full-time employment.

On September 20, 1985, a claims deputy for the Department of Jobs and Training determined that Henry should not be allowed any unemployment compensation benefits (even from General Foods) because she had quit her "employment" at Dolphin to seek other work. Following an appeal by Henry, a Department referee affirmed the claims deputy's decision. Henry appealed again, and a Commissioner's representative affirmed the denial of all benefits, although upon different grounds, concluding that Henry had refused a suitable offer of re-employment from Dolphin without good cause. Henry has requested review of the Commissioner's decision.

## ISSUES

1. Should Henry be disqualified from receiving unemployment compensation benefits from General Foods because she failed to accept Dolphin's offer of temporary employment?

2. Was Henry offered "suitable" work by Dolphin?

## ANALYSIS

■ 1. The facts of this situation are similar to those in *Smith v. Employers Overload Co.*, 314 N.W.2d 220 (Minn.1981), where two individuals were involuntarily separated from their regular full-time positions and sought temporary work. When they discontinued the temporary work, they were denied all unemployment compensation benefits on the basis that they had voluntarily discontinued employment with the temporary employment services. The supreme court disagreed, concluding that the workers did not abandon continuing employment and that they should not have been disqualified "for merely failing to appear for a possible offer of employment." *Id.* at 222. The court explained

---

1. Minn.Stat. § 268.04 (1984).

why the workers should not have been considered "employees" of the temporary services:

> The term of employment is determined by reference to the intention of the parties. * * * The intent of the parties was manifestly contrary to the notion of an ongoing employment relationship.

*Id.* at 223 (citation omitted). The *Smith* court cited *Danek v. Meldrum Manufacturing and Engineering Co.*, 312 Minn. 404, 252 N.W.2d 255 (1977), reasoning:

> [O]nce a worker accepts a job assignment, as was the case in *Danek*, the temporary service is one of the employers for that job until it is completed. However, it stretches our holding in *Danek* beyond what we intended to say that the temporary service agency is an employer to whom the worker must continue to report after the job assignment is completed at the risk of being disqualified from unemployment compensation benefits.

*Smith*, 314 N.W.2d at 224.

The facts in *Smith* indicate that one of the workers had applied for benefits after he had already begun working for the temporary service. As here, therefore, the temporary service would have been characterized by the Department as a "base period employer." The above language from *Smith*, however, demonstrates the court's refusal to consider work for the temporary services as base period "employment." Likewise, under the circumstances of the present case, the intent of the parties was "manifestly contrary to the notion of an ongoing employment relationship" with the temporary service. *Id.* at 223. Rather, the understanding between the parties was that Henry only wished to be assigned jobs at NCR in order to obtain permanent employment with NCR in her field of expertise.[2]

As Henry notes, to deny her all benefits under these circumstances would penalize her for attempting to obtain employment. If she had not sought temporary work from Dolphin, she would have been eligible for benefits from General Foods; however, under the reasoning of the Commissioner's representative, because she sought and later declined Dolphin's services she would now be denied benefits even from General Foods. The *Smith* court also found that this reasoning would be contrary to the intent of the legislature and would produce an absurd result:

> The statutory scheme requires a person actively to seek employment. * * * Yet, one who accepted employment of a limited duration in an attempt to comply with this statutory provision would later be disqualified from receiving unemployment compensation because deemed to have voluntarily discontinued employment when the temporary job came to an end. * * * *Disqualifying a person for working at a temporary position is inherently contrary to the policies of the statute.* * * * *Furthermore, it would require us to claim that a person was at fault by accepting temporary employment* * * *.

*Id.* at 223 (quoting *Loftis v. Legionville School Safety Patrol Training Center, Inc.*, 297 N.W.2d 237, 239, n. 5 (Minn.1980)) (citations omitted) (emphasis supplied). *Smith* continued:

> Even though relators could not have been required to accept an offer of day labor services because such work would have been deemed "unsuitable" for them, *see* Minn.Stat. § 268.09, subd. 2 (1980), once relators accepted such employment they were bound to continue to appear for job offers at the risk of disqualification under subdivision 1. Such a result penalizes the industrious worker and is

---

**2.** We do not intend to imply here that a temporary service should never be considered an "employer" for purposes of the unemployment statutes. However, this case and *Smith* are distinguishable on the facts from cases such as *Willrich v. Top Temporary, Inc.*, 379 N.W.2d 731

(Minn.Ct.App.1986), where a worker has been "hired" by a temporary service to perform suitable temporary work. *See also McDonnell v. Anytime Temporaries*, 349 N.W.2d 339 (Minn.Ct. App.1984).

contrary to existing legislative and judicial pronouncements.

*Smith,* 314 N.W.2d at 223.

We recognize that *Smith* was based upon the determination that employees did not voluntarily discontinue ongoing employment, whereas here the issue is whether Henry turned down an offer of re-employment from Dolphin. However, we believe the reasoning of *Smith* is applicable here. The intent of the legislature must be construed with respect to an entire statute, the provisions of which are presumed to be effective and certain and not absurd or unreasonable. Minn.Stat. § 645.17 (1984). Although construing a separate section of the act, *Smith* clearly indicates that under the same type of facts the legislature intended that an employee such as Henry should receive unemployment compensation benefits. This construction comports with the legislature's declaration that unemployment compensation benefits be awarded to those who are unemployed through no fault of their own. Minn.Stat. § 268.03 (1984). As *Smith* noted:

> [W]e have stated on numerous occasions that the unemployment compensation statute is remedial in nature and must therefore be liberally construed to effectuate the public policy of Minn.Stat. § 268.03 (1980) that unemployment reserves be used "for the benefit of persons unemployed through no fault of their own." * * * For this reason the disqualification provisions of the statute are to be narrowly construed * * *

*Smith,* 314 N.W.2d at 221–22 (citations omitted). The legislature has also indicated its desire that employment be "more stable". Minn.Stat. § 268.03.

Here, Henry sought work from Dolphin in an effort to obtain full-time work in an ongoing relationship similar to that which she enjoyed at General Foods. She declined a temporary assignment in order to seek full-time permanent work. Disallowing her benefits from General Foods under these circumstances would be contrary to the expressed purposes of the unemployment compensation statutes.

2. In *Smith,* the Commissioner's representative found that the unskilled labor offered by the temporary services was "unsuitable" for the workers, and the supreme court agreed. The *Smith* opinion was therefore based upon the assumption that the work offered to the employees was unsuitable.

In the present case, the Commissioner's representative held that Dolphin's offer of re-employment was suitable simply because Dolphin was a base period employer and had offered Henry the same type of work as before and at the same rate of pay. In so doing, the representative relied upon Minn.Stat. § 268.09, subd. 2 (1984). This statute disqualifies an individual from receiving unemployment compensation benefits if that individual fails, without good cause, to "accept a base period employer's offer of re-employment offering substantially the same or better hourly wages and conditions of work as were previously provided by that employer in his base period." Pursuant to *Smith,* however, we have concluded that under the specific facts of this situation, Dolphin was not truly a base period "employer"; thus, the above-quoted portion of Minn.Stat. § 268.09, subd. 2, is inapplicable here.

Nonetheless, the statute also indicates that an individual must be disqualified from receiving unemployment compensation benefits if he refuses to "accept suitable work when offered him." The supreme court has construed "suitable work" as "such work as the employee customarily performs or such as he is reasonably fitted to perform by past experience or training." *Swanson v. Minneapolis-Honeywell Regulator Co.,* 240 Minn. 449, 457, 61 N.W.2d 526, 531 (1953). Applying this definition, the supreme court in *Hendrickson v. Northfield Cleaners,* 295 N.W.2d 384 (Minn.1980), reversed a determination by the Commissioner's representative, concluding that permanent employment at a laundry was not suitable for a prior employee who was one quarter away from receiving a degree as a registered nurse

and who had previously taken the job in the laundry as temporary summer work only.

■ Likewise, in the case at bar, we reverse the Commissioner's representative since the evidence in the record demonstrates without question that the temporary job offered by Dolphin was unsuitable in light of Henry's circumstances and past history of employment. We find particularly persuasive the fact that Henry had been a full-time employee for 16 years at General Foods and was actively seeking *permanent* work. Dolphin offered no such employment. The short-term jobs offered by Dolphin were wholly inconsistent with Henry's previous long-term employment history.

It is also relevant that Henry had been separated from General Foods for only a brief period of time when she declined Dolphin's short-term offer. Further, the temporary work offered by Dolphin was secretarial, whereas Henry had been a computer specialist at General Foods.

> Maximum utilization of a worker's skill and experience is a recognized goal of the unemployment compensation system, and courts, as a general rule, have recognized the claimant's right to reject, without loss of benefits, a job which involves far less skill than he possesses.

*Hendrickson*, 295 N.W.2d at 386 (quoting from *In re Potvin*, 132 Vt. 14, 18, 313 A.2d 25, 27 (1973)).

The job offered by Dolphin paid $5 per hour, whereas Henry had been receiving $1,700 per month at General Foods. Although in some instances a job has been held to be suitable despite the fact that the wage was less than one previously received, *see e.g. Mastley v. Commissioner of Economic Security*, 347 N.W.2d 515 (Minn.Ct.App.1984), the supreme court has noted that a lower wage should be a factor

to be considered. *See Hendrickson*, 295 N.W.2d at 387, n. 3.

While we indicated in *Hogenson v. Brian Knox Builders*, 340 N.W.2d 360, 363 (Minn. Ct.App.1983), *app. after remand*, 361 N.W.2d 163 (Minn.Ct.App.1985), that whether or not an offer of employment is "suitable" was a question of fact to be determined by the Commissioner's representative, *Hogenson* is distinguishable on its facts and does not control the decision here.

The circumstances of this case compel us to hold that Henry did not refuse an offer of suitable employment from Dolphin. On this basis, therefore, Henry is not disqualified from receiving unemployment compensation benefits.[3] Since we reverse the Commissioner's decision for the reasons stated herein, we need not address Henry's claim that she had good cause for declining Dolphin's job offer.

Because we believe that *Smith* controls this case, the holding of *Berzac v. Marsden Building Maintenance Co.*, 311 N.W.2d 873 (Minn.1981), and its progeny (cited by relator) is inapplicable here.

### DECISION

1. Henry did not enter into an ongoing employment relationship with Dolphin.

2. Henry's rejection of an offer by Dolphin of "unsuitable" employment did not disqualify her from receiving unemployment compensation benefits from General Foods.

Reversed and remanded.

---

3. Because we have concluded that Henry's work for Dolphin did not constitute base period "employment" under the facts of this case, Dolphin should not be held liable for benefits payable to Henry. The file reflects that General Foods apparently did not receive notice of the hearings on this matter; nor did a representative of General Foods voluntarily appear at any stage of the proceedings. It is unfortunate that General Foods was not made a party to these proceedings. However, once its account is charged for Henry's benefits, General Foods may challenge the charge by the procedures provided by statute.