Allen ENZ, Relator,

v.

**HOLIDAY INN NORTH, Department of Jobs and Training, Respondents.**

**No. C0-86-27.**

Court of Appeals of Minnesota.

June 10, 1986.

Eugenia L. Hedlund, Law Offices of Southern Minnesota Regional Legal Services, Inc., Mankato, for relator.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Heard, considered and decided by LANSING, P.J., FOLEY and WOZNIAK, JJ.

## OPINION

LANSING, Judge.

Relator Allen Enz seeks review of a determination that he engaged in misconduct when he refused to make a presentation before a group of employees as requested by his employer. We agree with Enz that his actions did not constitute misconduct and, accordingly, reverse.

## FACTS

Allen Enz began working for Holiday Inn North in 1979 as an assistant kitchen manager. He earned $13,000 per year. He was responsible for supervising the kitchen when the manager was absent, scheduling the morning crew, ordering food, putting the food away, preparing time cards, and training new cooks in the areas of menu planning and food preparation.

Enz was notified sometime in May 1985 that he was scheduled to lead a portion of an employee training session, beginning Tuesday, June 18, 1985, at 2 p.m. Several managers and assistant managers were responsible for conducting portions of the training program. Enz would have been responsible for presenting his portion of the program, entitled "Listening" (to guests and their complaints), five times over a period of two days, before a total of 120 employees divided into five groups.

Enz testified that he originally thought he would only be assisting Ed Murphy, the food and beverage manager, but discovered on Friday, June 14, that he would be required to speak to the five groups himself. On Monday, June 17, the day before his presentation, he went to the office of Vicki Hill, Holiday Inn North's general manager, and told her that he was too frightened to do the presentation. Hill responded that he should speak with Ed Murphy, who was not scheduled to work until that evening. Enz called Murphy from home that evening and explained why he could not do the presentation the next day. Murphy was apparently irritated, but indicated that a compromise might be arranged. That same evening, Dan Rock, the kitchen manager, called Enz and told him that Murphy wanted to work out a compromise the next morning. Enz told Rock that he would come in the next morning.

Enz did not come in the next morning as arranged, but arrived at 1 or 1:15 p.m., shortly before his portion of the presentation was to begin. He testified that he had forgotten that he had agreed to take care of his four children that morning while his wife went to a job interview. However, even though his wife arrived home at 11 or 11:30 a.m., Enz did not go in to work until 1 or 1:15 p.m. He testified that he wanted to avoid the noontime rush and that he did not call in because he did not think about it. When Enz arrived, Murphy was working on the presentation with another manager and told Enz that he would be discharged.

## ISSUE

Was Enz discharged for reasons amounting to misconduct and therefore disqualified from receiving unemployment compensation benefits?

## ANALYSIS

■ The definition of "misconduct" for purposes of determining eligibility for un-

employment compensation benefits has been consistently applied by the Minnesota appellate courts:

> [T]he intended meaning of the term "misconduct" * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct."

*Tilseth v. Midwest Lumber Company*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)). An employer has the burden of proving misconduct by the greater weight of the evidence. *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 459, 209 N.W.2d 397, 400 (1973). Although an employer may be unhappy with an employee's performance and may even have good cause for discharging the employee, "[t]he issue * * * is not whether [the employee] should have been terminated, but whether, now that she is unemployed, she should be denied unemployment compensation benefits as well." *See Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142, 143 (Minn.1984).

▇ The Commissioner's representative focused on the fact that Enz did not show up on Tuesday morning as agreed and did not call in to explain his absence. The representative concluded that this demonstrated a willful or wanton disregard of Holiday Inn's interests. We disagree. An employee's one-time violation of an employer's request to work certain hours or report to work at a particular time may at times constitute misconduct. For example, in *Colburn v. Pine Portage Madden Brothers, Inc.*, 346 N.W.2d 159 (Minn.1984), the supreme court upheld a finding of misconduct where a waitress was fired after she had been specifically instructed to serve an entire meal to a group of 60 people but left for another engagement after serving only one course. However, an employee's failure to appear as directed may not automatically be characterized as misconduct. The issue is whether the employee's conduct demonstrates the culpability required by *Tilseth*.

▇ Enz is a kitchen manager who has no public speaking skills. It is true that he waited until the day before the presentation to inform his supervisors that he was too frightened to speak in public,[1] and, despite his employer's willingness to arrange a compromise, Enz failed to appear on the morning of the 18th. Nonetheless, we cannot conclude that this failure to appear demonstrated more than poor judgment. We simply do not find present here the culpability, whether negligent or intentional, required by *Tilseth*.

### DECISION

Enz did not commit misconduct by refusing to speak in public and failing to appear at work on the morning of the presentation because the record shows his actions were based on his fear of public speaking, which was completely outside the scope of his usual duties.

Reversed.

---

1. Although the Commissioner's representative noted that there was no medical evidence to support Enz's claim that he had a "phobia" about public speaking, the record suggests no other reason for Enz's refusal to participate as a speaker. The department does not dispute that Enz was afraid of making the presentation.