Linda L. McGOWAN, Relator,

v.

EXECUTIVE EXPRESS TRANSPORTATION ENTERPRISES, INC., Commissioner of Jobs and Training, Respondents.

No. C0–87–572.

Court of Appeals of Minnesota.

Sept. 8, 1987.

Michael J. Persellin, St. Cloud, for Linda L. McGowan.

Frank J. Kundrat, Jr., Hall, Byers, Hanson, Steil & Weinberger, P.A., St. Cloud, for Executive Express Transportation Enterprises, Inc.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Jobs and Training.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Relator Linda McGowan, a former van driver for the respondent company, seeks review of a determination by the Commissioner of Jobs and Training that she engaged in misconduct by refusing to pick up a prescription for the president of the company. We affirm.

## FACTS

The respondent Executive Express Transportation Enterprises, Inc. is a delivery service which ships freight between St. Cloud and the Minneapolis-St. Paul airport. The company is owned by Paul Rooney and his wife, Jill, who both work at the company offices. Paul Rooney is the president of the company, and Jill Rooney is the director of programs and operations.

Relator Linda McGowan was employed by Executive Express as a freight coordinator and van driver for approximately one year, until she was discharged on July 31, 1986. Her responsibilities included picking up freight from customers in the St. Cloud area, and transporting the freight in her van to Executive Express's offices in St. Cloud, from where the freight was shipped to the Minneapolis-St. Paul airport. Her employment agreement stated that her duties would include those "incidental or implied" from her position, "reasonably delegated as being in the best interests of the Company."

On July 30, 1986, Paul Rooney left McGowan a note requesting her to go to a St. Cloud clinic in her van during working hours to pick up a prescription. The prescription was for Paul Rooney himself, and was not intended for shipment by Executive Express. McGowan did not pick up the prescription that day because she did not have time and did not believe the request was appropriate.

When McGowan arrived at work the next day, she found another note from Rooney in her mailbox asking where the prescription was. She responded in a note of her own, stating that she had not had time to pick up the prescription the previous day, and did not believe the errand was part of her job. An argument ensued, McGowan refused to pick up the prescription, and she was discharged.

McGowan applied for unemployment compensation, and a hearing was held to determine her entitlement to benefits. At the hearing, McGowan testified that Rooney's prescription was at a clinic on the north side of St. Cloud, whereas her route on July 30 had covered the east and west side of St. Cloud. She admitted, however, that on some days her route would have covered the north side. She also admitted that she would have been paid her regular wage, that the pickup would have been on company time, and that it would have taken her 15 or 20 minutes. Finally, she indicated that when she refused the request she did not intend to willfully disregard the goals of the company, but believed she was simply turning down a personal request by Rooney.

Paul Rooney testified that he believed McGowan would have furthered company business by picking up the prescription because it would have allowed him "to stay at [his] desk * * * and do managerial things." He also testified that he was busy that day, and thought since McGowan was already in her truck, she might as well get the prescription when she had a chance.

The referee found that Rooney's request was reasonable under the circumstances, and concluded that McGowan's refusal "manifested a willful disregard for her em-

ployer's interests, and was a willful disregard of the standards of behavior which an employer has a right to expect of its employees." The referee therefore determined that McGowan was discharged for misconduct and was not entitled to receive unemployment compensation benefits.

On appeal, a Commissioner's representative affirmed the referee's findings and conclusions, stating:

The Referee found that the request was reasonable and within the framework of her job duties as a delivery person. The refusal to perform the duty constituted an intentional and substantial disregard of her duties and responsibilities.

McGowan has appealed by writ of certiorari from the Commissioner's decision.

### ISSUE

Did McGowan's refusal to pick up her employer's prescription constitute misconduct disqualifying her from the receipt of unemployment compensation benefits?

### ANALYSIS

"Misconduct" for unemployment compensation purposes has been defined as follows:

[T]he intended meaning of the term "misconduct" * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct."

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973).

Minn.Stat. § 268.09, subd. 1(2) (1984) states:

An individual separated from employment under clause * * * (2) shall be disqualified for waiting week credit and benefits.

*        *        *        *        *        *

(2) The individual was discharged for misconduct * * * *connected with work* or for misconduct which *interferes with and adversely affects his employment.*

(Emphasis supplied.)

■ The *Tilseth* definition thus defines the behavior and culpability required for a determination of misconduct, while the statute requires further that such behavior be "connected with his work" or "interferes with and adversely affects his employment." Generally, refusal to comply with an employer's reasonable request will constitute misconduct. *Sandstrom v. Douglas Machine Corp.*, 372 N.W.2d 89, 90–91 (Minn.Ct.App.1985).

This court's review of the Commissioner's findings is limited to determining whether there is evidence in the record which reasonably tends to sustain those findings. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). The Commissioner's conclusions of law, however, are not binding if they are not reasonably supported by the findings. *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn.1978).

■ In the present case, we conclude that the Commissioner's findings are reasonably supported by the record and reasonably support the Commissioner's conclusion that McGowan's actions constituted misconduct connected with her work. We first note that McGowan's employment agreement put her on notice that her duties were to include those "incidental or implied" from her position (i.e., "connected with" her work). McGowan was hired as a delivery person and was requested by the president of the company to pick up his prescription and deliver it to him. These facts support the Commissioner's finding

that the errand was within the framework of McGowan's duties and was incidental or implied from her position as a van driver.

The case of *Enz v. Holiday Inn North,* 388 N.W.2d 756 (Minn.Ct.App.1986) cited by McGowan is distinguishable. In *Enz,* an assistant kitchen manager was asked to lead a portion of an employee training session, and this court found such request to be "completely outside the scope of his usual duties." *Id.,* at 758. Here, on the other hand, McGowan was a van driver, and was requested to pick up a package in her van. Such request was not completely outside the scope of her usual duties.

In addition, the Commissioner's finding that the president's request was reasonable under the circumstances is supported by the record. McGowan was a van driver, whose duties involved picking up packages all over the city of St. Cloud. The request by her immediate supervisor and president of the company to pick up a package in St. Cloud during working hours was not unreasonable, particularly since the president testified that he was busy and wished to remain in the office that day, while McGowan was already on the road. As we stated in *Sandstrom,* "[w]hat is [a] 'reasonable' [request by an employer] will vary according to the circumstances of each case." *Sandstrom,* 372 N.W.2d at 91.

### DECISION

McGowan's refusal to perform a task incidental to her duties, reasonably delegated by her employer, and in the best interests of her employer, constituted misconduct.

Affirmed.

FOLEY, J., dissents.

FOLEY, Judge (dissenting).

I respectfully dissent and would hold that McGowan's behavior did not rise to the level of misconduct contemplated by Minn.Stat. § 268.09 and *Tilseth.*

As the supreme court has stated, an employer may be justified in discharging an employee, yet, the "issue * * * is not whether [the employee] should have been terminated, but whether, now that she is unemployed, she should be denied unemployment compensation benefits as well." *Windsperger v. Broadway Liquor Outlet,* 346 N.W.2d 142, 143 (Minn.1984).

Here, although the president's request may not appear unreasonable under the circumstances, the requested delivery was not "connected with" McGowan's work, and consequently her refusal was not misconduct "connected with her work" as required by section 268.09.

McGowan was employed by Executive Express to pick up and deliver packages for Executive Express. Running a personal errand, even if that errand involved picking up a package, was not within the scope of McGowan's work assignment. Nor can I agree with the majority's position that this personal errand was "incidental or implied" from McGowan's position as a van driver for the company.

Thus, while Executive Express may have had good reason to discharge McGowan, I do not believe her refusal to perform a task outside the scope of her employment established the culpability necessary to disqualify her from receiving unemployment compensation benefits. In my judgment, it was demeaning to the driver for the president of the company to expect this driver to run the president's personal errands. The driver was hired to pick up and deliver packages that directly related to the economic well-being of the company. Picking up prescription drugs is a highly personal matter which ought not to be delegated. What might have been the practice 50 years ago is not true in 1987, nor should it be.

I would reverse the Commissioner's conclusion that McGowan's refusal constituted misconduct.