**Linda L. McGOWAN,**
**Petitioner, Relator,**

v.

**EXECUTIVE EXPRESS TRANSPORTA-TION ENTERPRISES, INC., Commissioner of Jobs and Training, Respondents.**

**No. CO-87-572.**

Supreme Court of Minnesota.

March 18, 1988.

Michael J. Persellin, St. Cloud, for relator.

Frank J. Kundrat, Jr., St. Cloud, for Executive Exp. Transp.

Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Jobs and Training.

YETKA, Justice.

This is an appeal from a split decision of the Minnesota Court of Appeals, 411 N.W. 2d 593, affirming a determination of respondent Commissioner of Jobs and Training that relator Linda McGowan was disqualified from receiving unemployment compensation benefits due to misconduct. Relator, a delivery driver, was terminated for refusing to pick up a personal prescription for her supervisor, the president of respondent Executive Express Transportation Enterprises, Inc.

The commissioner's representative concluded that relator's refusal constituted misconduct under Minn.Stat. § 268.09,

subd. 1(2) (1984). The Minnesota Court of Appeals affirmed in a split decision. The majority concluded: (1) the findings of the commissioner reasonably support the conclusion that relator's actions constituted misconduct connected with work and (2) the employer's request to pick up the prescription was reasonable under these circumstances. The dissent concluded that relator's conduct did not establish the culpability necessary for disqualification under either the statute or *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973). McGowan appeals. We affirm.

The material facts are not in dispute. Relator Linda McGowan (hereinafter McGowan) was employed by respondent Executive Express Transportation Enterprises, Inc. (hereinafter Executive Express) as a freight coordinator and van driver for over 1 year. Executive Express is a small, family-owned freight delivery service in the business of shipping freight between St. Cloud and the Minneapolis–St. Paul airport. The company is owned by Paul and Jill Rooney, who also both work at the offices. Paul Rooney is president of the company and was McGowan's immediate supervisor.

McGowan's duties consisted primarily of picking up freight from the company's customers in the St. Cloud area and transporting the freight in the company's van to its offices in St. Cloud. The freight was then shipped to the Minneapolis–St. Paul airport.

When McGowan began her employment in June 1985, she signed an employment agreement. The agreement contained, *inter alia*, the following language:

2. The Employee agrees to abide by all the policies, rules, regulations, and standards established by the Company and further agrees to abide by all reasonable Company policies and decisions now or hereinafter existing.

3. The Employee agrees to perform the duties of this position faithfully, professionally, and in the best interests of the Company and public at all times. Employee shall also perform such further duties as are incidental or implied from the foregoing, consistent with the background, training and qualifications of Employee or may be reasonably delegated as being in the best interests of the Company.

The record would also tend to support that McGowan had some difficulties with her employer prior to the incident in question concerning her dress and the manner in which she spoke with various customers. Moreover, McGowan had used the company truck in the past for personal errands and for pick-ups and delivery of items not strictly related to Executive Express, but in the nature of the business of the employer.

At approximately 4:15 p.m. on July 30, 1986, Paul Rooney left a note for McGowan telling her to go to a St. Cloud pharmacy to pick up a prescription. It is undisputed that the prescription was for Rooney's personal medication and was not freight to be shipped by the company. However, because the office was extremely busy and the nature of Rooney's managerial duties required his presence by the telephone, he asked McGowan to pick it up during her regular delivery duties. McGowan would have been paid her regular salary. McGowan testified that she did not pick up the prescription on July 30 because she did not have time and because she did not believe it to be within the scope of her job duties. McGowan also admitted in her testimony that it would have adversely affected the company's operations for the owners of the company to leave the office at that time to pick up the prescription.

The next morning, July 31, Paul Rooney left McGowan a note asking where the prescription was. McGowan left Rooney a note informing him that she had not picked up the prescription because she had not had time and that she did not believe the errand was part of her job. When McGowan returned from some delivery duties later that morning, Rooney confronted her about the prescription. McGowan again stated that she felt it was not part of her job duties and refused to pick up Rooney's prescription. A discussion followed in the office, during which Rooney told McGowan she was to pick up the prescription or be

discharged. When another employee interrupted, McGowan left the office and sat in the company truck for 15–20 minutes. Rooney then came out to the truck and the argument continued. McGowan again refused to pick up the prescription and called Rooney some names; Rooney discharged her.

McGowan applied for unemployment compensation and, on August 15, 1986, was found eligible by a claims adjudicator for the Department of Jobs and Training. Executive Express appealed and a hearing was held before a referee. In a decision dated December 12, 1986, the referee ruled that McGowan was disqualified from receiving unemployment benefits, concluding that her refusal to pick up Rooney's prescription constituted misconduct under Minn.Stat. § 268.09, subd. 1(2) (1984).

The referee made no finding that McGowan's job duties included running personal errands for Rooney. Nonetheless, the referee found Rooney's directive to be "reasonable" and further found that McGowan's refusal manifested "a willful disregard for her employer's interests" and "a willful disregard of the standards of behavior which an employer has a right to expect of its employees."

On appeal, the referee's decision was affirmed by a representative of the commissioner in a decision dated March 10, 1987. The commissioner's representative specifically adopted the referee's findings of fact. However, the decision states: "The Referee found that the request was reasonable and *within the framework of her job duties* as a delivery person." (Emphasis added.) As noted above, the referee made no such finding.

The Minnesota Court of Appeals affirmed in a split decision. *McGowan v. Executive Express Transp., Inc.*, 411 N.W. 2d 593 (Minn.App.1987). The majority found the errand to be within McGowan's job duties and incidental or implied from her position as a delivery person. The majority also agreed with the commissioner's finding that Rooney's request was reasonable under these circumstances.

One judge dissented, finding the errand to be unconnected with McGowan's work. He found that her refusal was not misconduct "connected with" her work as required by the statute and the refusal to perform a personal errand was insufficient to establish the culpability necessary to disqualify an employee from receiving unemployment compensation benefits. McGowan now seeks further review by this court.

The issue before us is whether the record supports respondent commissioner's determination that McGowan's conduct under these circumstances constitutes misconduct under Minn.Stat. § 268.09, subd. 1(2) (1984), disqualifying her from receiving unemployment compensation. We hold that it does.

In general, the court's standard of review in economic security cases is rather narrow. The commissioner's fact findings are to be viewed in the light most favorable to the decision and will not be disturbed if there is evidence which reasonably tends to support them. *White v. Metro. Medical Center*, 332 N.W.2d 25, 26 (Minn.1983); *Reserve Mining Co., Babbit Div. v. Gorecki*, 316 N.W.2d 547, 549 (Minn.1982). However, the commissioner's conclusions of law are not similarly binding. *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn.1978). On questions of law, the court remains "free to exercise its independent judgment." *Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 221 (Minn. 1981).

In the present case, the commissioner's findings of fact are not in dispute. The primary question to be answered is whether those undisputed facts support the commissioner's conclusions of law; that is, whether McGowan's refusal to pick up her supervisor's personal prescription constitutes misconduct under these circumstances within the meaning of Minn.Stat. § 268.09, subd. 1(2) (1984). The determination of whether McGowan was properly disqualified from receiving unemployment compensation under the statute is clearly a question of law. *Smith*, 314 N.W.2d at 221.

Minn.Stat. § 268.09, subd. 1(2) (1984) governs disqualification for misconduct and states in relevant part:

An individual separated from employment under clause * * * (2) * * * shall be disqualified for waiting week credit and benefits.

* * * * * *

(2) The individual was discharged for misconduct * * * connected with work or for misconduct which interferes with and adversely affects his employment.

The statute does not define "misconduct" which leads to disqualification from benefits. However, in *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973), this court set out its construction of "misconduct," adopting the Wisconsin Supreme Court's definition of misconduct under a similar statute:

"[T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' * * *."

*Id.* at 374–75, 204 N.W.2d at 646 (*quoting Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)). We have previously followed the foregoing construction of the statutory language. *See, e.g., Sticha v. McDonald's No. 291*, 346 N.W.2d 138, 140 (Minn.1984); *Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142, 144 (Minn.1984); *Auger v. Gillette Co.*, 303 N.W.2d 255 (Minn.1981).

The court has also utilized the following principles in interpreting and applying this standard. First, the court has consistently recognized that economic security laws, being humanitarian and remedial in nature, are to be liberally construed. *Smith*, 314 N.W.2d at 221; *Hendrickson v. Northfield Cleaners*, 295 N.W.2d 384, 385 (Minn.1980). The legislature has declared the public policy of this state to be to grant benefits only to persons who are unemployed through no fault of their own. *Smith*, 314 N.W.2d at 221–22; *Auger*, 303 N.W.2d at 257. *See also* Minn.Stat. § 268.03 (1984). To effectuate these policy objectives, the court has construed the disqualification provisions of the statute very narrowly. *Mortel v. Indep. School Dist. No. 831*, 334 N.W.2d 408, 411 (Minn.1983); *Smith*, 314 N.W.2d at 222.

■ Next, consistent with these principles, the employee is presumed to be eligible to receive unemployment compensation after discharge. The employer has, therefore, been given the burden of proving an employee guilty of misconduct and thus disqualified from receiving benefits. *Windsperger*, 346 N.W.2d at 143; *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 459–60, 209 N.W.2d 397, 400 (1973).

■ McGowan argues that the commissioner and the court of appeals have erroneously applied the legal standard for misconduct. In our opinion, however, the decision of the court of appeals was correct. Relator makes the argument that the statute does not disqualify employees for conduct which has little or no bearing on the employer's business, citing the general test of this court enunciated in *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973) and cases following *Tilseth*, including *Sticha v. McDonald's No. 291*, 346 N.W.2d 138 (Minn.1984), and *Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142 (Minn.1984). We believe that the latter two cases reach into the outer limits of eligibility. We decline to liberalize further the granting of benefits contained in those two cases.

In this particular case, we believe that we can distinguish *Windsperger* and *Sticha*. *Sticha* dealt with the granting of time to attend a funeral when employee actually used the time to prepare for the

**596**

wake of the deceased. This really amounted to a distinction in mere form rather than substance, which we held did not constitute misconduct. The *Windsperger* case dealt with a hot-headed reaction. We are dealing with neither of those types of incidents in this case. The employee's decision was a deliberate, calculated and intentional refusal to carry out a directive of her employer. In addition, this is a small business where all of the duties of every employee cannot be anticipated or spelled out. Employees must perform a variety of duties to allow a small business to function smoothly. It was not unusual here for the drivers to perform incidental tasks. As a matter of fact, the requirement to do so was set out in their employment contracts. McGowan herself admitted that her refusal to perform the errand would have adversely affected the company's operations. The request by the employer was entirely reasonable. One in charge of a business must be allowed to expect that reasonable orders will be followed. Indeed, once the employer made the request here, he could be expected to follow up in order to maintain control of the business.

We do not see the dire consequences spelled out by relator as a result of the court of appeals' decision. On the contrary, a different result could cause the responsibility for carrying out a requested duty to shift from the manager to the employee as to whether it will be performed or not. We do not hold that every employee is required to perform every personal errand an employer may request or face disqualification for misconduct. From the record here, however, one can conclude that the requested errand was within the expected job duties of the employee. Indeed, similar errands apparently had been performed without protest previously.

For all of these reasons, we affirm the decision of the court of appeals in all respects.

POPOVICH, J., did not participate.