**Mohamed A. SOUSSI, Relator,**

v.

**BLUE & WHITE SERVICE CORP., Commissioner of Jobs and Training, Respondents.**

No. C1–92–2331.

Court of Appeals of Minnesota.

April 6, 1993.

David D. Himlie, Dederick & Himlie, P.A., Edina, for Mohamed A. Soussi, relator.

Kelley V. Rea, Minneapolis, for Blue & White Service Corp., respondent.

Kent E. Todd, Minn. Dept. of Jobs & Training, St. Paul, for Commissioner of Jobs and Training, respondent.

Considered and decided by KALITOWSKI, P.J., and PARKER and MULALLY *, JJ.

## OPINION

PARKER, Judge.

Relator Mohamed Soussi appeals the Commissioner's determination that his discharge from employment for misconduct disqualified him from receiving unemployment compensation benefits. We affirm.

## FACTS

Relator Mohamed Soussi was employed by Blue & White Service Corp. (BWSC) as its general manager and president from July 7, 1988, through November 26, 1991. BWSC provides radio dispatch services to taxicab owners. In March 1991 BWSC elected a new board of directors. Soussi and the new board did not get along very well; the board was especially concerned with his failure to consult board members before making decisions. For example, in May 1991 Soussi entered into an advertising contract without board approval. In response to his failure to seek board approval before entering into contracts, the board passed a resolution on June 1, 1991, providing that no company contract be entered into without board approval. Soussi was present at this meeting, and he testified that he was aware of and understood the resolution.

In August 1991 Soussi began negotiations to purchase an LCC[1] license, which allows cabs to transport packages as well as passengers. He subsequently entered into a contract, without seeking board approval, to purchase an LCC license for $10,000. Soussi acknowledges he intentionally kept the contract a secret from the board. He claims, however, it was in the company's best interests to keep the availability of the license a secret.

Soussi borrowed $3,000 from one of BWSC's owners to make the downpayment for the LCC license. The transaction was not properly recorded in the company's books. In addition, there was testimony that BWSC's treasurer was induced and misled by Soussi to sign a check for the outstanding balance of the LCC license fee. Rumors spread to BWSC's board of directors that he had purchased the license. At a board meeting on November 7, 1991, Soussi was asked to explain his actions to the board. He refused to cooperate and would not respond directly to the board's questions. At a subsequent meeting, the board voted to terminate his employment.

Soussi filed a claim for unemployment compensation, and the Department of Jobs and Training claims representative determined he was disqualified from receiving benefits. Upon appeal and after an evidentiary hearing, the referee reversed and found him to have been separated from employment for reasons other than misconduct. The Commissioner's representative, upon employer's appeal, in turn reversed and held Soussi disqualified from receiving unemployment compensation benefits because he was discharged from his employment for misconduct.

## ISSUE

Did the Commissioner's representative err in determining Soussi was discharged from his employment for misconduct?

## DISCUSSION

■■■ An appellate court reviews the Commissioner's factual findings in the light most favorable to the decision below and

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. The record does not indicate the meaning of the initials LCC. We presume, however, LCC refers to "Local Cartage Carrier."

will not disturb them if there is evidence reasonably tending to support those findings. *McGowan v. Executive Express Transp. Enter., Inc.*, 420 N.W.2d 592, 594 (Minn.1988). The Commissioner's conclusions of law, however, are not binding. *Id.* The determination of whether an employee was properly disqualified from receipt of unemployment compensation benefits is a question of law. *Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 221 (Minn. 1981). The employer has the burden to prove, by the greater weight of the evidence, that an employee has committed "misconduct" so as to be disqualified from receiving benefits.

Under Minn.Stat. § 268.09, subd. 1(b) (1992), an employee discharged from his or her employment for misconduct is not entitled to unemployment compensation. Although Minn.Stat. § 268.09 does not define misconduct, the supreme court has adopted the following definition:

> The intended meaning of the word 'misconduct' is limited to conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which an employer has the right to expect of his employee, * * * or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere * * * unsatisfactory conduct * * * or good faith errors in judgment or discretion are not to be deemed misconduct.

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973).

Generally, if an employer's request is reasonable and does not impose an unreasonable burden on the employee, the employee's refusal to accede to that request constitutes misconduct. *Sandstrom v. Douglas Machine Corp.*, 372 N.W.2d 89, 91 (Minn.App.1985). What is considered "reasonable," however, varies with the circumstances of each case. *Id.* This court has previously noted an employee's intentional refusal to perform a task, as opposed to negligent forgetfulness, supported the Commissioner's decision that an employee

committed misconduct. *See Bibeau v. Resistance Technology, Inc.*, 411 N.W.2d 29, 32 (Minn.App.1987) (employee deliberately chose to disobey her employer's instructions that she make quality checks, because she believed the order was "stupid"); *Daniels v. Gnan Trucking*, 352 N.W.2d 815, 816 (Minn.App.1984) (refusal to unload a truck was "a deliberate act of insubordination").

BWSC's board of directors passed a resolution specifically precluding employees from entering into contracts without authorization and approval of the board. Soussi was present at that meeting, and he testified that he understood he was not authorized to enter into contracts without prior board approval. Despite this understanding, he deliberately disregarded the board's resolution, entered into the $10,000 LCC contract, and refused to answer questions when the board wanted specific information about it.

Any "good faith" belief that the contract would benefit the company is irrelevant. Soussi was strictly instructed that board approval was required before entering into any company contract and was in no position to substitute his judgment for that of the board. The supreme court has previously noted, "[o]ne in charge of a business must be allowed to expect that reasonable orders will be followed." *McGowan*, 420 N.W.2d at 596. Likewise, in *Colburn v. Pine Portage Madden Bros.*, 346 N.W.2d 159 (Minn.1984), the court concluded that where an employee knowingly violated an agreement with the employer, the employee's actions constituted misconduct:

> Nevertheless, the fact remains that she deliberately chose a course of action which was adverse to the interests of her employer, which does constitute misconduct within the meaning of the law.

*Id.* at 161.

Soussi also argues that because the LCC contract *has* ultimately proved beneficial to the company, his behavior cannot constitute misconduct. We disagree. Soussi's claim that a company's president can deliberately disregard the board of directors and later contend that such behavior does

not constitute misconduct is a pernicious idea. While this opinion does not purport to address corporate law, Soussi's contention violates the nature of corporate organization and the law governing it.

It is quite possible that a company president's willful subversion of the board of directors can be as harmful to that company as any pecuniary loss. The board of directors was effectively Soussi's employer, and he had an obligation to follow the board's directives as well as to give full and complete information to the board. Soussi violated the standards of behavior which BWSC had a right to expect.

Moreover, we disagree with Soussi's argument and the referee's conclusion that Soussi's "discharge was motivated by political in-fighting and intrigue." While it is not uncommon for there to be political in-fighting on a board of directors, Soussi's actions may unnecessarily have exacerbated the problem. As company president, he should not have become involved in the board's disputes to the point of withholding information from selected members. His actions violated the board's express mandate to advance his personal agenda. We therefore affirm the decision of the Commissioner's representative that Soussi was discharged from his employment for misconduct and is disqualified from receiving benefits.

## DECISION

The Commissioner's representative correctly determined that Soussi was terminated from his employment for misconduct.

**Affirmed.**