*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0035**


Larry G. Farr,
Relator,

vs.

City of Maplewood,
Respondent,

Department of Employment and Economic Development,
Respondent.


**Filed August 10, 2015
Affirmed
Halbrooks, Judge**


Department of Employment and Economic Development
File No. 32730629-3

Larry G. Farr, Oakdale, Minnesota (pro se relator)

City of Maplewood, Maplewood, Minnesota (respondent)

Lee B. Nelson, Timothy C. Schepers, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

        Considered and decided by Halbrooks, Presiding Judge; Worke, Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Relator challenges the decision of the unemployment-law judge (ULJ) that he is ineligible for unemployment benefits because he was discharged for employment misconduct. He argues that (1) the ULJ's factual findings are unsupported by substantial evidence; (2) he did not commit employment misconduct by his disruptive behavior or by violating the purchasing policy; and (3) the ULJ committed various procedural errors. We affirm.

## FACTS

Relator Larry Farr was employed by respondent City of Maplewood from August 8, 2005, until June 6, 2014. In early 2014, Farr was the city's chief building engineer, reporting to the city's IT director. Discussions were underway by February about reorganizing the city's public-works department and eliminating the chief building-engineer position. On March 3, 2014, Farr e-mailed a 23-point complaint about the city manager to human resources. The next day, human resources formally notified Farr that the chief building-engineer position would be eliminated and explained Farr's options, including accepting a newly created position at the same pay rate.

Farr elected to accept the new position and assumed the position of building maintenance supervisor on March 24, reporting to the city's streets superintendent. The city manager retired later that spring, and some employees speculated that Farr's accusations contributed to the timing of his departure. On June 6, the city terminated Farr's employment based on incidents occurring between March 24 and June 3 in which

he continually complained about other staff, was insubordinate, broke a purchasing policy, and threatened an employee.

Farr applied for unemployment benefits and was found ineligible because he was discharged for employment misconduct. Farr appealed, and the ULJ held a hearing over three days at which seven witnesses testified. Farr was represented by counsel. The ULJ determined that "Farr's conduct, as a whole, showed clearly a serious violation of the standards of behavior the employer has a right to reasonably expect" and that Farr was ineligible for unemployment benefits because he was discharged for employment misconduct. Upon reconsideration, the ULJ denied Farr's request to consider additional evidence and affirmed the decision. Farr now appeals.

## D E C I S I O N

We review a ULJ's decision to determine whether a party's substantial rights were prejudiced because the decision is "(1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious." Minn. Stat. § 268.105, subd. 7(d) (2014).

Whether an employee engaged in employment misconduct presents a mixed question of law and fact. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). "Whether [an] employee committed a particular act is a question of fact." *Id.* The ULJ's factual findings are reviewed in the light most favorable to the decision. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). Courts will not

3

disturb the ULJ's factual findings when the evidence substantially sustains them. Minn. Stat. § 268.105, subd. 7(d). Whether an act constitutes employment misconduct is a question of law, which we review de novo. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011).

## I.

Farr challenges the ULJ's factual findings, arguing that they are not supported by substantial evidence. The ULJ found that the city discharged Farr because

> Maplewood's purchasing policy was reasonable, and Farr knowingly violated it. He also obstructed Maplewood's ability to move forward productively by continuing to bring up issues from the past. Farr was told to stop doing this, and he ignored those instructions. Even if Farr's criticisms were justified, they involved issues that were not his decision to make. Eventually, Farr became a significant disruptive force for Maplewood. His behavior in [his direct supervisor's] office on June 3, 2014, was particularly inappropriate.
>
> Farr's conduct, as a whole, showed clearly a serious violation of the standards of behavior the employer has a right to reasonably expect of the employee.

In making these findings, the ULJ credited the testimony of the city's witnesses, who contradicted Farr's version of events. We defer to the ULJ's credibility determinations when (1) they are supported by substantial evidence and (2) the ULJ sets forth a valid reason for crediting or discrediting testimony that may significantly affect the ultimate decision. *Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 533 (Minn. App. 2007); *see also* Minn. Stat. § 268.105, subd. 1a(a) (2014) (providing that the ULJ "must set out the reason for crediting or discrediting that testimony" when the witness's credibility "has a significant effect on the outcome of the decision").

4

The ULJ credited the testimony of the employer's witnesses because they "told a consistent story." In doing so, the ULJ provided a valid reason as required by statute. *See Ywswf*, 726 N.W.2d at 532 (providing that corroboration of testimony is a permissible factor in evaluating its credibility). Furthermore, the ULJ's reason is supported by the record. The employer's witnesses testified consistently about the incidents at issue. Because the ULJ gave reasons for his credibility findings and the findings are supported by substantial evidence, they are entitled to deference.

**Purchasing Policy Violation**

A city employee testified that the city's purchasing policy requires at least two verbal quotes for purchases from $5,000 to $9,999, and two written quotes for purchases between $10,000 and $19,999. In early April, a supervisor talked to Farr about the purchasing policy and handed him a copy of it. After receiving the written policy, on April 9, 2014, Farr ordered a new garage door from a vendor without seeking any quotes ahead of time. Farr testified that he had expected, based on a relatively recent, similar order, that the purchase price would be less than $10,000. The actual purchase price was $11,104. The ULJ found that "[e]ven if the price had been under $10,000, Farr still violated [the city's] policy, because he did not get two verbal quotes for the purchase."

**Disruptive Behavior**

Farr was instructed in a meeting on March 28 that in his new position, he should not bring up issues relating to his previous position that were no longer his responsibility. Despite this instruction, Farr repeatedly raised old complaints.

In a meeting on April 3 with six to eight people in attendance, Farr "brought up past faults of [the city manager] not supporting his area and the meeting got off track . . . to the point where [a parks and recreation employee] called [Farr] out and said, hey, we've got to move forward." According to another witness, Farr "kept rehashing the past" and the April 3 meeting agenda was derailed.

A supervisor testified that he met with Farr on April 7 to check on his workflow, and Farr complained about a consultant's work with the community center, which was not relevant to Farr's new job description. Farr became agitated and made comments about "get[ting] in someone's face" if they keep blaming things on him. The supervisor told Farr that he needed to set aside past grievances and move forward.

In an April 8 meeting with two supervisors, Farr complained "out of the blue" about the city manager cutting his budget in his previous position. And in a May 22 meeting convened for the purpose of creating and revising request for proposals, Farr "went on another rant about [the city manager] cutting his budget and staff hours" in his previous position.

On June 3, Farr and his direct supervisor met per their usual routine to discuss progress and the daily work schedule. According to Farr's direct supervisor,

> it went from [Farr] standing there smiling and having a light conversation to where his demeanor changed and he just came on into the office, closed the door and seemed somewhat agitated and he came to tell me how things were going to work . . . .
> . . . [H]e began to . . . tell me that if I don't get [the IT director] removed from the police department expansion because [the IT director] was incompetent that he would probably, he would have to do something, take some kind of

6

action. . . . He said . . . [the city manager] is no longer here because he wronged me.

Farr's direct supervisor felt threatened and immediately notified his own supervisor of the incident.

"[T]his court will not disturb the ULJ's factual findings when the evidence substantially sustains them." *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008). Deferring to the ULJ's credibility determinations and viewing the factual findings in the light most favorable to the decision, the ULJ's findings about Farr's policy violation and disruptive behavior are supported by substantial evidence in view of the record as a whole.

## II.

Farr argues that he did not commit employment misconduct because he had the city's best interests at heart with his attempts "to help resolve" "some real problems," and although he mistakenly assumed the garage door price would be less than $10,000, he followed the informal practice for purchases less than $10,000.

"Employment misconduct" is in relevant part "any intentional, negligent, or indifferent conduct that clearly displays a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." Minn. Stat. § 268.095, subd. 6(a) (2014). Whether employee conduct amounts to a serious violation of the standards of behavior the employer has the right to reasonably expect of employees is an objective determination that turns on whether the employer's expectation was reasonable

7

under the circumstances. *Jenkins v. Am. Express Fin. Corp.*, 721 N.W.2d 286, 290 (Minn. 2006).

Refusing to follow an employer's reasonable policies and requests generally constitutes employment misconduct. *Schmidgall*, 644 N.W.2d at 804. Insubordinate behavior has also been held to constitute misconduct. *See, e.g.*, *Montgomery v. F & M Marquette Nat'l Bank*, 384 N.W.2d 602, 605 (Minn. App. 1986), *review denied* (Minn. June 13, 1986) (rudeness to customers, fellow employees, and supervisor constitutes misconduct); *Snodgrass v. Oxford Props., Inc.*, 354 N.W.2d 79, 80 (Minn. App. 1984) (refusal to cooperate with supervisor or take directions constitutes misconduct).

Although Farr argues that his criticisms were intended to be constructive, the employer's witnesses disagreed, and the ULJ credited the employer's witnesses. Moreover, a good-faith belief that disobeying direct instructions "would benefit the [employer] is irrelevant." *Soussi v. Blue & White Serv. Corp.*, 498 N.W.2d 316, 318 (Minn. App. 1993). With respect to the purchasing policy violation, the record supports the ULJ's finding that regardless of the price, Farr's actions violated policy because he should have obtained two verbal quotes at a minimum before placing an order. But Farr ordered the garage door without even knowing the price.

Because Farr violated the purchasing policy, refused instructions to focus on his current responsibilities, and behaved "particularly inappropriate[ly]" toward his direct supervisor on June 3, the ULJ properly determined that Farr committed employment misconduct.

Farr raises a number of procedural concerns. He argues that the ULJ wrongly denied his attempt to serve a subpoena on the city for electronic data, the telephonic hearing violated his constitutional right to confront his accusers, and he should have been allowed to present additional evidence on reconsideration.

*Subpoena*

At the hearing, the ULJ reviewed all of the exhibits and specifically mentioned subpoena requests that Farr had submitted to DEED, but the record does not reflect any discussion of subpoenas by the parties or action by the ULJ. Farr's counsel did not request a continuance in order to pursue data or in any other way raise the issue over the course of the hearing, which took place over three days. Because the ULJ was not asked to rule on anything related to the subpoena request, this issue is not properly before us. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that generally an appellate court will not consider matters not argued to and considered by the district court).

*Telephonic Hearing*

Farr argues that the ULJ violated his constitutional right to face his accusers by holding a telephonic hearing. We note that the Sixth Amendment right to confront witnesses applies to defendants in criminal prosecutions, not applicants for unemployment benefits. State law does not require an in-person hearing in an unemployment-benefits administrative appeal. The department has the discretion to determine "the method by which the [evidentiary] hearing is conducted." Minn. Stat.

§ 268.105, subd. 1(c) (2014). And although a ULJ must "ensure that all relevant facts are clearly and fully developed," in general, evidentiary rules are relaxed in a DEED proceeding. *See* Minn. R. 3310.2922 (providing that a ULJ is not bound by evidentiary laws and rules so long as the ULJ uses only "reliable, probative, and substantial evidence" as the basis for its decision). A hearing is generally considered fair if both parties are afforded the opportunity to give statements, cross-examine witnesses, and offer and object to exhibits. *See Ywswf*, 726 N.W.2d at 529-30.

Here, the hearing lasted almost six hours over three days. Farr was represented by counsel, who called witnesses and cross-examined the city's witnesses. Both parties had an opportunity to offer and object to evidence and gave closing statements. We conclude that Farr received a fair hearing.

*Additional Evidence on Reconsideration*

In his request for reconsideration, Farr asserted that the ULJ's decision "is not reflective of what truly transpired at the City of Maplewood in months" prior to Farr's discharge. Farr asked the ULJ to consider additional evidence, contending that he had not been permitted to talk about his March 3 complaint against the former city manager. But at the hearing, the ULJ specifically asked Farr's counsel, "[I]s it your intention and the applicant's intention to give me much testimony today about the background involving the applicant's former position and any grievances he had[?]" Farr's counsel responded, "Your Honor we would prefer to stick with the four issues highlighted by [a city employee] for the reason given for [Farr's] termination." These reasons were that

10

"[Farr] continually badmouthed other staff, he was insubordinate, . . . he broke a purchasing policy, and he also threatened an employee."

In deciding a request for reconsideration, a ULJ "must not consider any evidence that was not submitted at the hearing, except for purposes of determining whether to order an additional hearing." Minn. Stat. § 268.105, subd. 2(c) (2014). An additional hearing is warranted if additional evidence "would likely change the outcome . . . and there was good cause for not having previously submitted that evidence" or would show that evidence submitted at the hearing was likely false and had an effect on the outcome. *Id*.

On appeal, Farr does not identify any good cause for not having previously submitted the evidence at the hearing. Nor does he explain his claim that the city's witnesses perjured themselves at the hearing. Under these circumstances, the ULJ properly declined to receive on reconsideration evidence that Farr and his counsel had affirmatively declined to present at the six-hour hearing.

**Affirmed.**