Patricia S. MORTEL, et al., Relators,

v.

INDEPENDENT SCHOOL DISTRICT NO. 831, FOREST LAKE PUBLIC SCHOOLS, Respondent,

and

Commissioner of Economic Security, Respondent.

No. C8–82–1336.

Supreme Court of Minnesota.

June 3, 1983.

Jeffrey W. Jacobs, Minneapolis, for relators

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for respondent.

SCOTT, Justice.

This matter is before the court for review on a writ of certiorari from an order of the Commissioner of Economic Security denying unemployment compensation benefits to relators. Relators, 19 full-time bus drivers for Independent School District No. 831, were laid off on Tuesday, October 27, 1981, when district teachers went on strike. Relators did not participate in or have a direct interest in the strike. They filed claims for unemployment benefits on the first day of the layoff. The teachers' strike was settled, and relators returned to work on Monday, November 16, 1981. The sole issue presented is whether the commissioner was correct in holding that relators' "disqualification week" under Minn.Stat. § 268.09, subd. 3 (1982), commenced on November 1, 1981, the Sunday after the week in which the strike and layoff began, rather than on Tuesday, October 27, 1981, the first day of the strike and layoff.[1]

Minn.Stat. § 268.09, subd. 3, provides that an individual who is unemployed because of a strike in which he is not participating or directly interested is disqualified for benefits for one week following the commencement of the strike. The commissioner determined that this disqualification period began on Sunday, November 1, 1981, and extended through Saturday, November 7, 1981. Relators contend the disqualification week began on the date they were laid

off, Tuesday, October 27, 1981, and ran for seven consecutive days through Monday, November 2, 1981.

Determining eligibility for unemployment compensation is a two-step process. First, the claimant must meet a four-pronged eligibility test set forth in Minn.Stat. § 268.08, subd. 1 (1982). Second, the claim must be analyzed to determine if any of the disqualification conditions listed in Minn. Stat. § 268.09 are present.

Two separate one-week periods, a "waiting week" and a "disqualification week," are involved in this process. To qualify for unemployment compensation benefits a claimant must satisfy the waiting week requirement of Minn.Stat. § 268.08, subd. 1(4), which provides:

Subdivision 1. Eligibility conditions. An individual shall be eligible to receive benefits with respect to any week of unemployment only if the commissioner finds that:

\* \* \* \* \* \*

(4) *He has been unemployed for a waiting period of one week during which he is otherwise eligible for benefits under sections 268.03 to 268.24,* provided, however, payment for the waiting week shall be made to such individual after he has qualified for and been paid benefits for four weeks of unemployment in a benefit year which period of unemployment is terminated because of such individual's return to employment. No individual shall be required to serve a waiting period of more than one week within the one year period subsequent to filing a valid claim and commencing with the week within which such valid claim was filed.

(Emphasis added.)

The second one-week period involved is the disqualification week provided by Minn. Stat. § 268.09, subd. 3. That statute disqualifies individuals for benefits for one week if their unemployment is due to a

---

1. The commissioner's decision stated that the disqualification week began "Sunday, October 31, 1981." All parties agree this was a clerical error, because October 31, 1981, was a Satur-day, and they agree he intended to find that the disqualification week began Sunday, November 1, 1981.

labor strike in which they are not participating or interested:

Subd. 3. Labor dispute. An individual who has left or partially or totally lost his employment with an employer because of a strike or other labor dispute at the establishment in which he is or was employed shall be disqualified for benefits:

\* \* \* \* \* \*

(b) *For one week following the commencement of the strike or labor dispute if he is not participating in or directly interested in the strike or labor dispute.*

(Emphasis added.) The parties agree that the disqualification week of §· 268.09, subd. 3, and the waiting week of § 268.08, subd. 1(4), run consecutively and that the disqualification week would precede the waiting week. The only issue on appeal is the date on which the disqualification week commences.

Minn.Stat. § 268.04, subd. 27 (1982), defines "week" as follows:

Subd. 27. "Week" means calendar week, ending at midnight Saturday, or the equivalent thereof, as determined in accordance with regulations prescribed by the commissioner.

The commissioner contends that under the definition of "week" contained in § 268.04, subd. 27, a week must begin on a Sunday, and that under § 268.09, subd. 3, the week that followed the commencement of the labor dispute was the week that began Sunday, November 1, 1981, and extended through Saturday, November 7, 1981. Relators contend that the "week following the commencement of the strike," Minn.Stat. § 268.09, subd. 3, is simply a seven consecutive day period which began the day the employees were laid off, Tuesday, October 27, 1981, and extended through Monday, November 2, 1981.

■ We hold that under Minn.Stat. § 268.09, subd. 3, the "week following the commencement of the strike," properly interpreted, is the seven consecutive day period following the commencement of the strike, beginning in this case on Tuesday,

October 27, 1981, and extending through Monday, November 2, 1981. The employees' "waiting week" under § 268.08, subd. 1(4), thus began on Tuesday, November 3, 1981, and ran through Monday, November 9, 1981. Relators were eligible for benefits after that date.

The commissioner errs in stating that under the definition of a week under § 268.04, subd. 27, a week must commence on a Sunday. That section defines a week as a "calendar week, ending at midnight Saturday, *or the equivalent thereof,* as determined in accordance with regulations prescribed by the commissioner." (Emphasis added.) As the commissioner does not claim that any regulations govern the question, a week may be either a calendar week ending at midnight Saturday, or the equivalent thereof. A seven consecutive day period beginning on Tuesday and ending on midnight Monday is the equivalent of a calendar week beginning on Sunday and ending at midnight Saturday.

The interpretation urged by relators is the more natural and commonsense reading of § 268.09, subd. 3. There is merit to relator's argument that the commissioner's interpretation alters the language of § 268.09, subd. 3, from "one week following the commencement of the strike" to a disqualification for one week *following the week* of the commencement of the strike.

Under the commissioner's interpretation the disqualification period in dispute will vary in length from seven days to thirteen days, depending upon the day of the week the strike or labor dispute commences. The commissioner has offered no rationale, other than his own interpretation of the statute, for applying disqualification periods of differing length to employees who lose their jobs through no fault of their own.

■ Ultimately, of course, the date on which the disqualification week begins depends upon the intention of the legislature. The commissioner's interpretation is inconsistent with the overall purposes of the act and the disqualification provisions of § 268.09, subd. 3. The legislatively de-

clared policy of the act is to benefit "persons unemployed through no fault of their own." Minn.Stat. § 268.03 (1982). Because of the purpose of the act, the disqualification provisions of § 268.09 are to be narrowly construed. *Hendrickson v. Northfield Cleaners,* 295 N.W.2d 384, 386 (Minn. 1980); *Sajevic v. Greenbrier Home, Inc.,* 298 Minn. 574, 216 N.W.2d 864 (1974). These relators, who were not participating or interested in the strike, lost their employment through no fault of their own. Section 268.09, subd. 3, should not be construed to impose a disqualification period twelve days in length when a reasonable reading of the statute requires only a seven-day period.

Finally, it should be noted that relators rely on two regulations of the Department of Economic Security which were in effect when the claims were filed but which have since been repealed.

ES 19 provided in part:

Any individual residing in an area in which the Department maintains a full-time employment office shall report in person at such office and there file his initial claim for benefits. *Said claim shall become effective on the Sunday of the calendar week in which filed.*

ES 20 provided in part:

An individual's week of unemployment (total or part-total) shall consist of the seven consecutive day period during which he is unemployed, *beginning with the day on which he registers in person, or the day on which his registration may be made effective retroactively as permitted by ES 19, at an office of the Department of Economic Security.*

(Emphasis added.)

Relators note that arguably under these regulations the disqualification week should have commenced on October 25, 1981, the Sunday before the layoff. They do not urge the court to adopt this interpretation, however, insisting instead that the disqualification week should begin on Tuesday, October 27, 1981, the day they were laid off. The commissioner contends that the regulations were designed to apply to the waiting week under § 268.08, subd. 1, and not the disqualification week under § 268.09, subd. 3, in dispute here.

These regulations tend to support relators' position. Their precise applicability is somewhat unclear because the regulations do not expressly state whether they apply to waiting week determinations, disqualification week determinations or both. As the application of these regulations is arguably unclear, and it is not necessary to consider them in resolving this case, we do not rely on them in reaching our decision.

Reversed.