**Edward ROMANOWICZ, et al., Relators,**

v.

**CONSOLIDATED FREIGHTWAYS CORP., Commissioner of Economic Security, Respondents.**

No. C7–95–16.

Court of Appeals of Minnesota.

June 13, 1995.

Robert Latz, Ronald S. Latz, Minneapolis, for relators.

Kent E. Todd, Dept. of Economic Sec., St. Paul, for Com'r of Economic Sec.

Considered and decided by HUSPENI, P.J., and NORTON and KLAPHAKE, JJ.

## OPINION

HUSPENI, Judge.

Relators appeal by writ of certiorari the determination of the Department of Economic Security Commissioner's representative that relators were disqualified from reemployment insurance benefits because they were participating in a labor dispute. Because we conclude that respondent employer has failed to establish that customary work was available and that relators failed or refused to perform such work, we affirm in part and reverse in part.

## FACTS

Respondent Consolidated Freightways Corporation is a trucking company engaged in interstate commerce. Relators are 36 individuals who are members of the machinists' union and were employed by respondent as mechanics.

On April 5, 1994, respondent posted a notice stating that the Teamsters were meeting to decide whether to strike and that

> [i]n the event of a strike of selected terminals at our company, any terminal struck will not resume operations until there is an agreement reached with the union on the new contract.

At one minute after midnight on April 6, 1994, the Teamsters went on strike. Shortly after that, a picket line formed at respondent's facility.

Several relators arrived to work their scheduled shifts at times prior to 12:50 p.m. on April 5, 1994. Several Teamsters told relators that they would allow relators to work that day, but they would not allow relators to cross the picket line the next day. The Teamsters threatened at least one relator by saying that his legs would be broken. Relators' union attempted to convince the striking Teamsters to allow relators to cross the picket line to report for work, but the Teamsters indicated that relators would not be allowed to cross the picket line.

A relator who was scheduled to report for work at 6:00 a.m. on April 6, 1994, was able to enter the facility and work. When he left the facility at 2:00 p.m., there were between 100 and 200 striking Teamsters picketing between the gate and the public road. The picketers yelled profanities at him and told him that it would not be safe for him to return the next day. The Teamsters spat upon his vehicle; a number of Teamsters had to be restrained by their union steward. A management person at the gate yelled at the striking Teamsters to let relator pass, but took no other action.

During the strike, respondent allowed the striking Teamsters access to its restrooms, located near the area where relators normally would have worked. The strikers obtained wooden pallets from respondent's facility and burned them to keep warm on the picket line. They were observed drinking alcohol and having a large quantity of alcohol at the picket line. There were rumors that the striking Teamsters had weapons in their vehicles.

During the beginning days of the strike, several relators telephoned respondent's facility and inquired about the status of the strike. Relators asked whether respondent could guarantee their safety if they attempted to report to work; respondent stated that they could not guarantee relators' safety. Respondent had two management personnel at the facility throughout the course of the strike, one at the gate and one in the office area. The local police informed respondent that they would not take any action against the strikers unless there was a violation of law.

The strike ended on April 29, 1994. Nineteen or 20 relators were called back to work immediately, and the remainder were called back within a week.

Relators filed claims for reemployment insurance benefits which were given effective dates of either April 3, 1994, or April 10, 1994.[1] A Department of Economic Security (Department) representative determined that relators were disqualified from receiving reemployment insurance benefits for each week of the strike due to their participation in the labor dispute. Relators filed timely appeals from this determination. A Department referee conducted an evidentiary hearing on October 10, 1994. On October 31, 1994, the referee affirmed the Department's determination. Relators appealed.

The Commissioner's representative modified the referee's decision and held that relators were disqualified from receiving reemployment insurance benefits on April 6, 7, and 8, 1994, because respondent had work available for relators on those dates and relators were participating in the labor dispute by either failing or refusing to perform the work.

The Commissioner's representative also determined that relators were disqualified from receiving reemployment insurance benefits for one week following the end of their participation in the labor dispute, from April 10 through April 16, 1994, and that relators must serve a waiting week during the period from April 17 through April 23, 1994. Thus, the Commissioner's representative held that relators were entitled to reemployment insurance benefits only from April 24, 1994, until such time as they returned to work.

## ISSUES

1. Does the record support the Commissioner's representative's findings and conclusions that relators were disqualified from reemployment insurance benefits because they were participating in a labor dispute?

2. Did the Commissioner's representative properly deny relators benefits for both a disqualification week and a waiting week?

1. One relator had initially filed a claim effective June 13, 1993, but Department of Economic Se-

## ANALYSIS

### Standard of Review

When reviewing questions of law, this court is not bound by the Commissioner's conclusions of law, but is free to exercise its independent judgment. The issue of whether a claimant is properly disqualified from the receipt of unemployment benefits is a question of law.

*Markel v. City of Circle Pines*, 479 N.W.2d 382, 384 (Minn.1992) (citation omitted). This court reviews the Commissioner's representative's decision, rather than the referee's decision. *Tuff v. Knitcraft Corp.*, 526 N.W.2d 50, 51 (Minn.1995).

■ 1. Reemployment insurance benefits are provided for persons who are "unemployed through no fault of their own." Minn. Stat. § 268.03 (1992). In the event of a labor dispute:

An individual who has left or partially or totally lost employment with an employer because of a strike or other labor dispute at the establishment in which the individual is or was employed shall be disqualified for benefits:

(1) for each week during which the strike or labor dispute is in progress; or

(2) for one week following the commencement of the strike or labor dispute if the individual is not participating in or directly interested in the strike or labor dispute.

Participation includes the failure or refusal of an individual to accept and perform available and customary work at the establishment.

Minn.Stat. § 268.09, subd. 3(a) (1992).

The critical inquiry is whether the employer sustained its burden of establishing that the claimants "participated" in the strike and were therefore disqualified from the receipt of benefits. The employer, to have satisfied this standard, must have shown that there was customary work available and that the employees failed or refused to perform it.

curity records reveal he had not served his waiting week requirement prior to April 6, 1994.

*Kabes v. Middleton,* 324 N.W.2d 187, 189 (Minn.1982).

In his memorandum, the Commissioner's representative stated that "[respondent's] witness testified that there was work that would last up to a week," and that one relator testified that "in addition to work on [April] 6th, there was a couple of days of further work." The Commissioner's representative found, based upon that testimony, that customary mechanic work was available on April 6, 7, and 8, 1994. The Commissioner's representative added:

> In accordance with the court's decision in *Kabes v. Middleton,* 324 N.W.2d 187 (Minn.1982), there is no requirement that work necessarily be available for all the claimants, simply that at least some of the claimants could have worked at least those three days.

The Commissioner's representative then determined that because there was customary work available for at least some of the claimants on April 6, 7, and 8, 1994, claimants who did not perform that work are held to be participating in a labor dispute for those three days and are, therefore, disqualified from payment of reemployment insurance benefits for the duration of their participation.

Relators claim that respondent has not established that customary work was available within the meaning of the statute. We agree and conclude that the Commissioner's representative's reliance on *Kabes* is misplaced.

The *Kabes* court found that the workers were fully aware that work was available and that the only reason the workers left their jobs and failed to return was because their steward directed them to decline the work. *Id.* at 189. The *Kabes* court concluded:

> The statute requires no such communication once the employees have announced a decision not to perform their duties and to honor a picket line.

*Id.*

The *Kabes* court found persuasive the Commissioner's representative's finding that "no claimant made any attempt to report for work thereafter, nor in any other way notify the employer that he or she was available for work." *Id.* at 190. The *Kabes* court also agreed with the Commissioner's representative's determination that "to go through the motions of scheduling work for employees after they have unequivocally refused to continue on the job, would be a 'charade.'" *Id.* at 190.

The present case is factually distinguishable from *Kabes.* The Commissioner's representative found that, unlike *Kabes,* respondent never told relators' union, nor any of the relators individually, that work would be available throughout the course of the strike and that respondent had posted a notice before the strike began stating that, in the event of a strike, respondent would not resume operations until respondent and the Teamsters' union agreed to a new contract. Relators here never indicated that they would not perform their duties; rather, the record indicates that they wanted to work. As found by the Commissioner's representative, several relators telephoned respondent during the beginning days of the strike inquiring about the strike's status and whether respondent could guarantee their safety if they attempted to report for work. Further, relators' union attempted to convince the striking Teamsters to allow relators to cross the Teamsters' picket line.

We conclude that respondent has failed to show that there was customary work available and that relators failed or refused to perform such work. Thus, respondent has not sustained its burden of establishing that relators participated in the strike and were disqualified from the receipt of benefits.

In view of our decision that relators were not participating in the strike, we decline to address their argument that this court should recognize a violence exception to the reemployment insurance disqualification statute. We also deem it unnecessary to address relators' argument that the disqualification week begins the first day following the last day of any participation in the strike by relators.

■ 2. The Commissioner's representative, relying on *Mortel v. Independent Sch. Dist. No. 831,* 334 N.W.2d 408 (Minn.1983),

concluded that the disqualification week arising under Minn.Stat. § 268.09, subd. 3(a)(2) and the waiting week of Minn.Stat. § 268.08, subd. 1(4) (1992)[2] run consecutively, and not concurrently. We agree.

The *Mortel* court stated:

The parties agree that the disqualification week of § 268.09, subd. 3, and the waiting week of § 268.08, subd. 1(4), run consecutively and that the disqualification week would precede the waiting week. The only issue on appeal is the date on which the disqualification week commences.

*Id.* at 410.

Relators assert that the Commissioner's representative erred in relying on *Mortel* because the *Mortel* court did not actually *hold* that the disqualification week and the waiting week run consecutively; rather, the parties in *Mortel* stipulated to that interpretation, so the court did not have to make a legal determination as to whether that agreement was a correct interpretation of the law. Relators further argue that Minn.Stat. § 268.08, subd. 1, imposing a waiting week, does not apply to those not working due to a strike because each of the four conditions under Minn.Stat. § 268.08, subd. 1 must be met before an individual is eligible to receive benefits, and paragraph 3, requiring that an individual actively seek work, could not logically apply to those on strike. We disagree.

Although the language in *Mortel* regarding consecutive weeks is dicta, that language is persuasive. We conclude that relators were disqualified from receiving reemployment insurance benefits for one week following commencement of the strike, *see* Minn.Stat. § 268.09, subd. 3(a)(2), and that this week runs consecutively with and prior to the waiting week of Minn.Stat. § 268.08, subd. 1(4). As respondent argues, there would be no purpose to a statutory one-week disqualification in connection with a strike if that disqualification could be served concurrently with the waiting week.

## DECISION

Because we conclude that respondent has not sustained its burden of establishing that relators were participating in the strike, we reverse the Commissioner's representative's determination that relators were disqualified from receiving benefits on April 6, 7, and 8, 1994, as a result of any such participation. We further conclude that relators were disqualified from receiving reemployment insurance benefits for one week following the commencement of the strike on April 6, 1994, that is from April 7 through April 13, 1994, and that this week runs consecutively and prior to the waiting week that is a general condition for eligibility, that is from April 14 through April 20, 1994.

**Affirmed in part and reversed in part.**

---

2. Minn.Stat. § 268.08, subd. 1 provides that [a]n individual shall be eligible to receive benefits with respect to any week of unemployment only if the commissioner finds that the individual * * * (4) has been unemployed for a waiting period of one week during which the individual is otherwise eligible for benefits.