**Agnes S. MBONG, Relator,**

v.

**NEW HORIZONS NURSING,**
**Respondent,**

**Commissioner of Economic Security, Respondent.**

**No. C4–99–1469.**

Court of Appeals of Minnesota.

April 11, 2000.

Bernice L. Fields, Fields Law Office, Minneapolis (for relator).

Lisa Montague Ingalls, Henretta, Cross, Ness & Dolan, Minnetonka (for respondent New Horizons Nursing).

Kent E. Todd, Department of Economic Security, St. Paul (for respondent Commissioner of Economic Security).

Considered and decided by DAVIES, Presiding Judge, LANSING, Judge, and HARTEN, Judge.

## OPINION

DAVIES, Judge.

When laid off from full-time employment, relator Agnes Mbong, a licensed practical nurse, accepted a few one-day assignments from a temporary employment agency. After two weeks, she declined further temporary assignments because she felt her time was better spent searching for permanent, full-time work. The commissioner ruled that she was disqualified from reemployment benefits. We reverse, remand, and deny the motion for attorney fees.

## FACTS

At the end of February 1999, Agnes Mbong was laid off from a permanent job. She then contacted a temporary employment agency, respondent New Horizons Nursing, for which she had occasionally worked for in the past. New Horizon, which serves nursing homes, does not guarantee employees any work offers or shifts. Even if a shift is offered to an employee, the shift can be canceled by the agency client up to two hours before it is scheduled to begin.

On February 28 and March 2, 1999, Mbong completed one-day assignments from New Horizons. On March 5, she accepted another one-day assignment, but when she arrived, the client informed her that they needed a nurse's aide, not a licensed practical nurse. She was sent home and paid for four hours of work. After March 5, Mbong accepted several other assignments, but they were all canceled by the client.

Frustrated with the cancellations and the confusion over client needs, Mbong decided that she should pursue something more permanent and would no longer accept temporary assignments. Two months later, she obtained full-time, permanent employment as a nurse.

Mbong applied for reemployment benefits for the two months she was unemployed. Following an evidentiary hearing, a reemployment insurance judge found Mbong eligible for benefits. The judge determined the one-day assignments offered by New Horizons were not "suitable" employment because Mbong had a history of full-time, permanent employment. The record demonstrates that, although she worked for temporary employment agencies at times during her base period (October 1997 to September 1998), even those

assignments were for long-term positions and, once she obtained a permanent, full-time position, Mbong stopped accepting further temporary assignments.

The commissioner's representative reversed the reemployment judge's decision, concluding that Mbong was disqualified on two separate grounds. First, she failed without good cause to accept "suitable" work offered by New Horizons in violation of Minn.Stat. § 268.095, subds. 8 and 9 (1998). Second, her failure to accept further temporary assignments constituted a "quit" under Minn.Stat. § 268.095, subds. 1 to 3 (1998).

## ISSUES

I. Did relator "decline an offer of suitable employment" by refusing further assignments of short duration when her work history demonstrated a pattern of seeking and obtaining long-term employment?

II. Did relator "quit" employment with New Horizon under Minn.Stat. § 268.095, subds. 1 to 3 (1998), by failing to accept further temporary assignments?

III. Is relator entitled to costs and fees under rule 115.05 of the Minnesota Rules of Civil Appellate Procedure or under the Minnesota Equal Access to Justice Act?

## ANALYSIS

### I. Failure to Accept Suitable Employment

■ The commissioner concluded that Mbong had failed to accept suitable work from New Horizons. An employee who fails to accept suitable employment without good cause shall be disqualified. Minn.Stat. § 268.095, subd. 8(a)(2). "Suitable employment" is

employment in the claimant's labor market area that is reasonably related to the claimant's qualifications. In determining whether any employment is suitable for a claimant, the degree of risk involved to the health and safety, physical fitness, prior training, experience, length of unemployment, prospects for securing local employment in the claimant's customary occupation, and the distance of the employment from the claimant's residence shall be considered.

Minn.Stat. § 268.095, subd. 9(a). An offer is not "suitable" if

the wages, hours, or other *conditions of employment are substantially less favorable* than those prevailing for similar employment in the locality.

Minn.Stat. § 268.095, subd. 9(b) (emphasis added). In considering whether a temporary position constitutes suitable employment, courts have looked to the employment history of the employee. *Compare Henry v. Dolphin Temp. Help Servs.*, 386 N.W.2d 277, 281 (Minn.App.1986) (short-term jobs offered by temporary agency wholly inconsistent with 16–year history of full-time employment of relator, who was actively seeking permanent, full-time employment), *with Vejdani v. Western Temp. Servs., Inc.*, 486 N.W.2d 461, 462–63 (Minn.App.1992) (temporary assignment suitable offer when relator had worked primarily for temporary agencies during base period and there was no evidence she sought permanent full-time employment).

■ The commissioner's representative is vested with wide discretion in determining whether the offered work is suitable. *Di Re v. Central Livestock Order Buying Co.*, 246 Minn. 279, 288, 74 N.W.2d 518, 526 (1956). But the commissioner's representative must follow and apply the relevant statutory standards. *Id.*

Here, the commissioner's representative concluded that the temporary assignments were suitable because the employment offered by New Horizons was in the nursing field, involved duties that Mbong had performed for this employer in the past, and paid comparable wages. The commissioner's representative did not comment on the fact that the assignments were temporary, that the work was not guaranteed and could be canceled, that one-day assignments were inconsistent with her employ-

ment history, or that Mbong's unemployment lasted less than two months.

█ Based on this record, the commissioner's representative erred in finding that the temporary, one-day assignments were suitable. The record shows that Mbong sought temporary work because she was separated from full-time permanent employment for non-disqualifying reasons. But she wanted something stable and permanent, rather than accepting one-day assignments that could be, and were, canceled by the client without warning and without compensation. Even though she had worked for three temporary agencies during her base period, even these positions were long-term, not short-term, assignments. As noted above, employment is not suitable if the "conditions of employment are substantially less favorable than those prevailing for similar employment in the locality." Minn.Stat. § 268.095, subd. 9(b).

Although the temporary jobs were in the nursing field, they were temporary assignments, with no guarantee of future employment. Temporary jobs are inherently less favorable than permanent work. This is especially significant when one considers that Mbong obtained full-time, permanent employment less then two months after she was laid off.

## II. Quit Without Good Cause

The commissioner's representative also found Mbong disqualified on the ground that her failure to accept further temporary assignments from New Horizon constitutes a "quit," thus disqualifying her under Minn.Stat. § 268.095, subds. 1 to 3.

The threshold issue is whether an employee who fails to accept further assignments from a temporary employment agency "quit" employment. This issue was settled in *Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 221–22 (Minn. 1981). *Smith* held that when the employment relationship involves a temporary agency the mere failure to appear for a possible offer of employment does not mean that the relator "quit" the employment. *Id.* at 222. In *Smith*, the two relators were laid off from their regular full-time employment, then accepted four one-day assignments through a temporary agency. Both relators refused further temporary assignments in favor of searching for permanent, full-time work. The commissioner disqualified both because they had voluntarily terminated their employment with the temporary agencies. *Id.* at 221.

The Minnesota Supreme Court reversed this disqualification, stating: "The intent of the parties was manifestly contrary to the notion of an ongoing employment relationship." *Id.* at 223. To hold otherwise, the court ruled, would penalize the "industrious worker" for seeking temporary employment after losing full-time employment under non-disqualifying conditions. *Id.* We add that to hold otherwise would also have the effect of trapping employees of temporary agencies in long-term relationships in which all obligation to perform fell only on the employee. Once this became generally known, it would undermine the ability of temporary agencies to recruit new employee clients.

█ Consistent with the rationale of *Smith*, the failure of relator to accept further fill-in assignments from New Horizon does not constitute a "quit" under Minn. Stat. § 268.095, subds. 1 to 3.

The commissioner claims that *Smith* has been overruled by subsequent statutory amendments, pointing to these words:

> This [disqualifying provision] shall apply to:
>
> > (1) all covered employment, full time or part time, temporary or limited duration, permanent or indefinite duration * * *.

Minn.Stat. § 268.095, subd. 11(1) (1998).

█ This provision, enacted in 1997,[1] does not alter the holding in *Smith*. In

---

1. 1997 Minn. Laws ch. 66, § 54.

analyzing the employment relationship with a temporary agency, *Smith* relied on basic contract principles. With temporary agencies, an employment relationship arises only when each temporary assignment is offered and accepted. Once each assignment is completed, the employment relationship ends because there is neither a guarantee of future assignments nor any employer obligation to provide them. A refusal, avoidance, or unwillingness to accept future assignments does not constitute "quitting" employment.[2] The reasoning in *Smith* applies with full force to the amended statute. We hold that the commissioner erred in finding Mbong disqualified under the "quit" provisions of Minn. Stat. § 268.095, subds. 1 to 3.

### III. Request for Attorney Fees

 Relator requests costs and fees under Minn. R. Civ.App. P. 115.05. But rule 115.05 does not provide for such relief against the Department of Economic Security.

She also requests fees and expenses under the Minnesota Equal Access to Justice Act (MEAJA), Minn.Stat. § 15.472 (1998), which permits an award of fees and other expenses in a "civil action or contested case" brought against the state if the position of the state is not "substantially justified." Without deciding whether MEAJA might apply to reemployment determinations in some circumstances, we decline to award costs or fees in this case. We cannot say the department's position, based on its misreading of a statute, was not without some justification.

---

2. In contrast, if the worker accepts an assignment from the temporary agency, but refuses without good cause to complete that specific assignment, the worker may face disqualification under the "quit" provisions. *See McDonnell v. Anytime Temporaries*, 349 N.W.2d 339, 341 (Minn.App.1984) (disqualifying relator for quitting when he accepted two-week assignment from temporary agency, but worked

---

## DECISION

The commissioner erred in disqualifying relator from reemployment benefits. We remand to the commissioner for proceedings consistent with this decision. Attorney fees are denied.

**Reversed, remanded, and motion denied.**

only one day and then refused to complete assignment); *see also Holman v. Olsten Corp.*, 389 N.W.2d 236, 240–41 (Minn.App.1986) (relator who accepted six-week assignment with temporary agency, then quit after two days, was not disqualified, but her benefits were suspended for period she would have held temporary assignment).