# IN THE COURT OF APPEALS OF IOWA

No. 18-0981
Filed May 15, 2019

**TERESA L. SLADEK,**
      Plaintiff-Appellant,

**vs.**

**EMPLOYMENT APPEAL BOARD and KELLY SERVICES USA LLC,**
      Defendants-Appellees.

_____

      Appeal from the Iowa District Court for Johnson County, Chad A. Kepros,

Judge.

      Teresa Sladek appeals the denial of her application for unemployment

benefits.  **AFFIRMED.**

      John S. Allen, and Samuel Stender and Majed Alzben, Clinic Law Students,

Iowa City, for appellant.

      Rick R. Autry, Des Moines, for appellees.

      Heard by Vogel, C.J., and Vaitheswaran and Doyle, JJ.

**VAITHESWARAN, Judge.**

Teresa Sladek appeals the denial of her application for unemployment benefits. She challenges the Employment Appeal Board's determination that she voluntarily quit her employment with temporary services employer Kelly Services USA, LLC (Kelly) without good cause attributable to the employer.

## I.    *Background Facts and Proceedings*

Sladek was an employee of Kelly, a company that temporarily places employees with business clients. Kelly placed Sladek with ACT, a standardized-testing company, as a customer-care representative. Sladek could not maintain the pace, and ACT ended the assignment.

On June 28, 2017, a senior account talent manager for Kelly telephoned Sladek to inform her that ACT released her from the assignment. According to the manager, Sladek responded by "crying," "basically yelling at" her, and hanging up on her. The manager testified Sladek "made a pretty bold statement there by hanging up on me so that I did not contact her. I waited to hear back from her."

Sladek did not call the manager until more than one month later. She apologized for hanging up on June 28 and requested another assignment. The manager told her she "had concerns with the way that [Sladek] handled the phone call and how she hung up" on her and she did not know if she would be comfortable placing her again.

Meanwhile, Sladek filed a claim for unemployment benefits. The Iowa Department of Workforce Development denied the claim. Sladek appealed the decision. Following a contested case proceeding, an administrative law judge affirmed the denial of benefits. Sladek filed an intra-agency appeal with the

Employment Appeal Board. The board concluded "the administrative law judge's decision [was] correct" and "adopted" it "as its own." On judicial review, the district court affirmed the agency decision. This appeal followed.

## II.     *Voluntary Quit*

Iowa Code section 96.5(1) (2017) disqualifies a person from benefits if the person "left work voluntarily without good cause attributable to the individual's employer." The statute sets forth several exceptions to the disqualification rule, including the following:

> The individual is a temporary employee of a temporary employment firm who notifies the temporary employment firm of completion of an employment assignment and who seeks reassignment. Failure of the individual to notify the temporary employment firm of completion of an employment assignment within three working days of the completion of each employment assignment under a contract of hire shall be deemed a voluntary quit unless the individual was not advised in writing of the duty to notify the temporary employment firm upon completion of an employment assignment or the individual had good cause for not contacting the temporary employment firm within three working days and notified the firm at the first reasonable opportunity thereafter.

Iowa Code § 96.5(1)(j)(1). The administrative law judge determined the exception was inapplicable to Sladek's circumstances, reasoning as follows:

> The purpose of the statute is to provide notice to the temporary agency employer that the claimant is available for and seeking work at the end of the temporary assignment. While the administrative law judge understands that claimant had never been expected to strictly comply with the three-day policy, this separation from employment is different from claimant's previous separations. During her previous separations from temporary assignments, the employer offered to seek additional work for her. That was not the case during her separation on June 28. At no point during the June 28 conversation did the claimant ask for or the employer offer any additional work. Further, claimant abruptly ended the conversation by hanging up on the employer, and she made no additional contact for approximately four weeks. The employer had no reason to believe that claimant was seeking an additional assignment. Rather,

the administrative law judge believes that claimant hanging up on the employer and ceasing contact for multiple weeks demonstrates an intent to end her employment relationship with the temporary staffing agency.

As noted, the Employment Appeal Board adopted the administrative law judge's decision.

Sladek challenges implicit and explicit findings of the agency, the agency's application of law to fact, and the agency's interpretation of law. Our review of the fact findings is for substantial evidence. *See* Iowa Code § 17A.19(10)(f). The agency's application of law to fact will be upheld if it is not irrational, illogical, or wholly unjustifiable. *See id.* § 17A.19(10)(m); *Bunger v. Emp't Appeal Bd.*, No. 17-0560, 2017 WL 6027768, at *1 (Iowa Ct. App. Nov. 22, 2017). The board's interpretation of section 96.5(1) is reviewed for errors of law. *See* Iowa Code § 17A.19(10)(c); *Irving v. Emp't Appeal Bd.*, 883 N.W.2d 179, 185 (Iowa 2016) (stating interpretation of the term "employer" is not clearly vested by a provision of law in the discretion of the agency and does not require deference).

Sladek begins by arguing she could not have voluntarily quit because "the employment relationship" with Kelly "ceased to exist" when Kelly "did not offer an alternate placement." The argument implicates the board's implicit finding of an ongoing employment relationship with Kelly after ACT ended Sladek's assignment.

Sladek cites two out-of-state opinions for the proposition that no employment relationship existed after the June 28 phone call. Both are inapposite.

In the first, *Mbong v. New Horizons Nursing*, 608 N.W.2d 890, 894 (Minn. Ct. App. 2000), the court was asked to decide whether an employee of a temporary agency who failed to accept day-to-day assignments could be found to have quit

employment. In that context, the court held "the failure of [a claimant] to accept further fill-in assignments from [a temporary employment agency] doe not constitute a 'quit' under" the Minnesota unemployment compensation statute. *Mbong*, 608 N.W.2d at 894. Relying "on basic contract principles," the court stated, "With temporary agencies, an employment relationship arises only when each temporary assignment is offered and accepted. Once each assignment is completed, the employment relationship ends because there is neither a guarantee of future assignments nor any employer obligation to provide them." *Id.* at 895.

In this case, the question is not whether Sladek could be found to have quit without good cause attributable to the employer if she declined a proffered assignment. The question is whether Sladek could be found to have quit without good cause attributable to the employer where she hung up on her supervisor and failed to reinitiate contact for more than a month. Applying contract principles, as the court did in *Mbong*, the answer is yes. Sladek's employment agreement obligated her to "maintain[] weekly contact with Kelly." Under the agreement, if fourteen days elapsed after her last day worked, her employment with Kelly was to terminate unless she was placed on another assignment. *Mbong* is factually and legally distinguishable.

So too is *Cintemp, Inc. v. Unemployment Insurance Review Board*, 717 N.E.2d 988, 990 (Ind. Ct. App. 1999). There, employees of a temporary agency were placed with companies that could elect to permanently hire the individuals after a trial placement. *Cintemp*, 717 N.E.2d at 990. The companies offered the temporary assignees permanent employment, which they accepted. *Id.* The companies then laid them off. *Id.* The employees applied for unemployment

compensation. *Id.* at 990–91. The temporary employment agency was notified of the applications and responded with an assertion that the employees quit without good cause. *Id.* at 991. The Indiana unemployment agency rejected the assertion. *Id.* The agency determined, once the employees accepted permanent employment, their assignments through the temporary employment agency ended. *Id.* The Indiana court of appeals upheld the determination. *Id.* at 992.

Sladek, in contrast, was not offered permanent employment with ACT. To the contrary, the company ended her temporary assignment. At that juncture, Sladek's contract with Kelly required her to maintain contact with Kelly if she desired new assignments. As the agency found, she failed to do so.

We conclude the Employment Appeal Board's implicit finding that Sladek had an ongoing employment relationship with Kelly after the ACT assignment ended is supported by substantial evidence. *See* Iowa Code § 17A.19(10)(f). We further conclude the board did not err in interpreting the unemployment statute to find an employment relationship.

Sladek next contends she could not have voluntarily quit because she lacked the requisite intent to quit. The agency found otherwise based on Sladek's decision to "hang[] up on the employer and ceas[e] contact for multiple weeks." The finding is supported by substantial evidence.

Finally, Sladek argues she "cannot be deemed to have quit under Iowa Code [section] 96.5(1)(j) because Kelly had notice of her separation from ACT within three days." Sladek's argument is appealing at first blush because it is undisputed Kelly knew of the separation and, indeed, notified Sladek, obviating the need for Sladek to contact Kelly. But the final agency decision maker did not rely

on the three-day notification obligation in finding a voluntary quit.[1] The agency relied on Sladek's conduct during and after the fateful June 28 phone call. Specifically, the administrative law judge found "claimant abruptly ended the conversation by hanging up on the employer, and she made no additional contact for approximately four weeks." As noted, the finding is supported by substantial evidence. Additionally, the agency's application of law to fact is not irrational, illogical, or wholly unjustifiable. *See id.* § 17A.19(10)(m).

### III.     *Exemption to Benefit Disqualification*

In the alternative, Sladek argues that, if her quit was properly deemed voluntary, she falls within the section 96.5(1)(j) exception to disqualification. The argument mirrors her final argument above as to why she the agency should not have found a quit. As discussed, the agency determined the exception was inapplicable. The agency's application of law to fact was not irrational, illogical, or wholly unjustifiable.

Like the district court, we affirm the decision of the Employment Appeal Board.

**AFFIRMED.**

---

[1] The initial decision maker did rely on the three-day notification obligation. But the decision was superseded by the administrative law judge's decision, which was adopted in full by the Employment Appeal Board.